# THOMAS CONGER v. THOMAS W. GILMER.

APPOINTMENT TO OFFICE.—The Boards of Supervisors, in filling vacancies in office, appoint to office; they do not elect.

APPOINTMENT BY BOARD OF SUPERVISORS.—The appointment to office by the Board of Supervisors is not complete until the person appointed has received a certificate of his election under the seal of the Board, signed by the proper officers of the Board. An appointment made by a majority of the Board may be revoked at any time before such certificate is issued, and another person may be appointed.

ELECTION TO OFFICE.—In the case of an election to office by the people, the rule is different, and the issuance of a commission is a mere ministerial act.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*Robinson & Dunlap*, for Appellant.

The appointment is complete when the commission issues. (*People* v. *Whitman*, 10 Cal. 44; *Marbury* v. *Madison*, 1 Cranch, 137.) We have been unable to find any authorities to the contrary. We have been referred to *The State* v. *Jeter*, 1 McCord, 233; and *State* v. *Lysle*, 1 McCord, 238; but they are both cases of election, where the party had held for years, and do not apply in this case. A commission or certificate must issue to all appointed officers. (Hittell's Digest, Art. 4,734.)

*J. G. McCullough, Attorney-General,* for Respondent, argued that the Act providing for the government of Sacramento County, approved April 25th, 1863, provided for filling vacancies in office by the Board of Supervisors, but made no provision for issuing certificates of appointment or election. He also cited *People* v. *Scannell*, 7 Cal. 432; *Magee* v. *Board of Supervisors of Calaveras County*, 10 Cal. 376; and *The People* v. *Maywarn*, 5 Mich. 146.

By the Court, Sanderson, J.:

This is an action brought by the Attorney-General, under the provisions of the fifth chapter of the Practice Act, to determine the right or title to the office of Justice of the Peace for the City of Sacramento, as between the relator, Thomas Conger, and the defendant, Thomas W. Gilmer. The relator and the defendant both claim title to the office under and by virtue of an appointment made by the Board of Supervisors of Sacramento County to fill a vacancy occasioned by the death of James Coggins, who had been elected to the office in question at the judicial election in 1865, and was holding it at the time of his death.

The case is as follows: The office having become vacant by the death of Coggins, the Board of Supervisors, at a regular

session, held at the Court House on the 4th of April, 1866, proceeded to fill the vacancy. Three persons were put in nomination, namely : Joseph Shaw, A. A. Wood and the relator, Thomas Conger. On the eighth ballot Conger received a majority of all the votes cast and was declared elected by the President of the Board. Thereafter the amount of Conger's official bond was fixed at five thousand dollars. On the next day Conger presented his bond and the same was referred to the Finance Committee. On the next day a resolution was offered by Supervisor Beckman to the effect that the appointment of the relator be reconsidered and set aside and that the Clerk of the Board be directed not to issue any certificate to Conger. This resolution was adopted. The Board then proceeded and filled the vacancy by the appointment of the defendant, who subsequently received a certificate of his appointment, qualified and entered into the possession of the office. Subsequently the relator instituted proceedings in the District Court of the Sixth Judicial District by mandamus against the Board to obtain a certificate of his appointment, which resulted in his favor, and having qualified, he demanded the office from the defendant, who refused to surrender. Hence this action. The relator was successful in the Court below and the defendant has brought the case here.

The only question involved in the case is whether the Board of Supervisors had the power which they exercised, or attempted to exercise, on the 6th of April, to reconsider and set aside their previous action in relation to the appointment of the relator, and direct their clerk not to issue his commission. If they had, their subsequent appointment of the defendant was valid, and he having duly qualified is now rightfully in possession of the office. Whether they had or not depends upon the nature of the power which is vested in them to fill vacancies—whether the power is that of " appointment " or " election," as contradistinguished from each other, and as to that question we think there is little room for controversy. The power to fill vacancies, whether vested in the Governor, Boards of Supervisors or other public functionaries,

is of the same legal complexion, and in our statutes is denominated the power of appointment, and is distinguished from that of election. The words "appointment" and "election" represent different tenures. The people elect, the Governor or other functionary appoints. Section one of the Act concerning offices and officers provides that "there shall be elected or appointed, as hereinafter declared, the following officers," etc. Throughout the Act the term "election" is applied to the action of the people in choosing officers, and the term "appointment" is applied to the action of whatever officer or Board is vested with the power to fill the given vacancy. Where the officer is chosen by the people, he takes by virtue of his election. Where the office has, from any cause, become vacant before the expiration of the term, and it is filled by the choice of the Governor or some other public functionary, the person chosen takes by virtue of his appointment.

The fact that Boards of Supervisors, when they exercise the appointing power, do so by first taking a vote, does not affect the character of the power or render it at all different from what it is when exercised by the Governor. The Board acts by majorities, and in all cases the sense of the Board has therefore necessarily to be ascertained by taking a vote. The will of the Board can be ascertained in no other way, and the vote serves that purpose only, and does not convert the power exercised by them from that of "appointment" to that of "election."

The general law upon the subject of offices and officers (Statutes 1863, p. 388, Sec. 16) provides that every officer elected or appointed to fill a vacancy shall be commissioned or receive a certificate of election or appointment. It is true that the Act providing for the government of the County of Sacramento, and which, so far as it goes, controls the decision of this case, has no such provision, and that all Acts and parts of Acts inconsistent therewith are so far repealed, but it does not therefore follow that no commission or certificate is to be issued to officers in Sacramento County. On the contrary,

the latter Act being silent on that subject, the general law supplies the rule—for there can be no conflict between them where one is silent.    It follows, then, that the Board of Supervisors, when an appointment is made by them, must issue to the appointee a commission or certificate of appointment, under the seal of the Board and signed by the proper officers of the Board.

The power then being that of " appointment," the next question is, when is the appointment complete—when can it be said that the appointment has been made?    Has it been made when the President of the Board has announced the result of the ballot, or when the commission or certificate of his appointment has been made out?

In *Marbury* v. *Madison*, 1 Cranch, 54, it was held by Mr. Chief Justice Marshall that the appointment has been made when the last act required of the person vested with the power has been performed.    In that case the appointment was made by the President of the United States, and it was held that the appointment was complete when the President had signed the commission.    This must be so for obvious reasons.    Until the last act has been performed the whole matter is *in fieri*, and within the control of the person or persons by whom the appointment is to be made, and there is nothing to prevent them from changing their minds and appointing some other person than the one first selected.    Suppose the Governor should be called upon to fill a vacancy and should determine in his own mind to appoint a particular individual. Undoubtedly he may change his mind as often as he may please until he has finally signed a commission to some particular individual.    Until then he has not acted.    Until then the whole matter is *in fieri*.    Where the appointment comes from the Board of Supervisors the rule is the same.    Until they have finally acted—that is to say, until the commission or certificate of appointment has been made out in due form under the seal of the Board, and signed by the officers of the Board, the whole matter is still within their control and they

are as much at liberty to change their minds as the Governor. No distinction can be made between the two cases.

It results that the Board had power to rescind their first action at the time they did so, and further, that the subsequent appointment of the defendant was valid.

Where a person is elected to an office his right is established by the result of the election, and does not depend upon his getting a commission, for in such a case the choice comes from the people, and when they have voted the last act required of them has been performed. In such a case the issuing of the commission is merely a ministerial act, to be performed by the proper officers, and not, as in the case of a taking by appointment, a part of the act to be done. Hence the authorities cited by the Attorney-General have no application.

The judgment is reversed and the Court below directed to enter a judgment in conformity with the views expressed in this opinion.