State *ex rel.* Cole *v.* Chapman.

STATE EX REL. CHARLES J. COLE *vs.* CHARLES R. CHAPMAN.

By the charter of the city of Hartford a city attorney is to be appointed by a major vote of the entire court of common council in joint convention assembled. Held—

1. That a quorum, and a quorum only, of each branch of the common council was necessary to make a convention of the entire common council.

2. That the major vote intended was a major vote of those actually assembled and participating in the ballot, and not a major vote of all the members elected.

3. That a blank vote cast was to be counted.

Where, under a vote previously passed by the convention to elect the city attorney by ballot, twenty-two votes were cast for each of two candidates and a blank vote, and the tellers did not count the blank vote, but reported a tie, and the mayor gave a casting vote (which he was authorized to do in case of a tie), for one of the candidates and declared him elected, after which the convention passed a resolution that the mayor's declaration of the election was erroneous, and that they would proceed to vote for city attorney by yeas and nays, and thereupon, against a ruling of the mayor that such action was out of order, passed by a yea and nay vote a resolution that the other candidate was appointed city attorney—it was held—

1. That in the first vote taken there was not a tie, and that therefore it was not a case where the mayor had a right to give a casting vote.

2. That it was therefore a case where the convention had a right to proceed to appoint.

3. That it was not necessary that the convention should formally rescind its vote to elect by ballot, but that the legal effect of the resolution to elect by a yea and nay vote was to rescind that vote, which was all that was necessary.

INFORMATION in the nature of a quo warranto; filed in the Superior Court in Hartford County, and heard on the 29th day of April, 1878, before *Hovey, J.* The case is fully stated in the opinion.

*H. C. Robinson,* for the relator.

*A. P. Hyde,* for the defendant.

HOVEY, J. This is an information in the nature of a *quo warranto,* filed by the State's Attorney at the relation of Charles J. Cole against Charles R. Chapman, to test the title of the respondent to the office of city attorney of the city of Hartford.

State *ex rel.* Cole *v.* Chapman.

The respondent in his plea justifies under and by virtue of an election by the major vote of the entire court of common council of the city of Hartford, in joint convention assembled, on the 15th day of April, 1878, in accordance with the provisions of the city charter; and he alleges with particularity the manner in which the election was made, the number of votes cast, and the number which he and the relator respectively received, and every other fact necessary to entitle him to hold and exercise the office in question.

The relator replies, specially setting forth certain provisions in the charter of the city of Hartford prescribing the mode of electing the city attorney, the number of members of which the court of common council is composed, and the proceedings of that court on the occasion referred to by the respondent in his plea, and claiming that the respondent upon that occasion did not, but that he, the relator, did receive the major vote of the said court of common council then assembled in joint convention, and that he, the relator, was thereby appointed and chosen to the said office of city attorney.

The respondent rejoins by denying the truth of the matters contained in the replication of the relator, and alleging that on the 15th day of April, 1878, he, the respondent, was duly and legally elected by a major vote of the entire court of common council of the city of Hartford, attorney of said city for the year ensuing. Issue was joined to the court upon this rejoinder, and the parties were fully heard thereon.

The question, therefore, is—Was Charles R. Chapman, the respondent, duly and legally elected on the 15th of April last to the office of attorney of the city of Hartford, as alleged by him in his plea and rejoinder? The charter of the city provides that there shall be a court of common council of said city, which shall consist of two separate branches—a board of aldermen and the common council board; that the board of aldermen shall be composed of all the aldermen of said city and the common council of all the common councilmen of said city; and that one-half of each board shall constitute a quorum thereof. The board of

aldermen consists of sixteen members, and the common council board of thirty-two members, making in all forty-eight members of both boards.

The charter also provides that an attorney of the city, who shall be counsel to the corporation and whose duties and compensations shall be fixed by by-laws or ordinances, shall be appointed by a major vote of the entire court of common council in joint convention assembled; and that the mayor shall be the presiding officer of all joint conventions of that court and be empowered to give a casting vote in all cases where the action of any such convention shall result in a tie. And by an ordinance of the court of common council, passed in accordance with the charter, it is provided that a meeting of the entire court of common council shall be holden yearly upon the second Monday after the annual city election, for the choice of such officers as are to be chosen by said court in joint convention. The court of common council constituted as stated, assembled in joint convention on the 15th day of April, being the second Monday after the annual city election, for the choice of such officers as were to be chosen in joint convention. Forty-five members of said court were present and participating in the action of the convention. The mayor also was present and presided. On motion it was voted that the convention proceed to the election of city attorney by ballot, and thereupon the mayor appointed one alderman and one councilman to act as tellers in collecting and counting the ballots. The convention then proceeded to vote by ballot for city attorney, and forty-five ballots were cast, one of them being a blank ballot. The tellers, however, reported to the mayor that the whole number of ballots cast was only forty-four, and that twenty-two of those were for the relator and twenty-two for the respondent. The blank ballot they did not report. The mayor thereupon declared that the action of the convention had resulted in a tie, and voted *vivâ voce* for the respondent, and declared him to be elected attorney of said city for the year ensuing, and until his successor is appointed and qualified.

The relator introduced a large number of witnesses to prove a mistake on the part of the tellers in counting the

ballots, and that in fact he received at least twenty-three ballots instead of twenty-two, as reported by the tellers, and that the respondent received twenty-one only instead of twenty-two, as the tellers reported. The respondent introduced evidence to prove that the count of the tellers was correct.

Alderman Dow, one of the tellers, testified that he counted the ballots cast twice, and upon each count he found twenty-two for the relator and the same number for the respondent, and one blank.

Mr. Higgins, the clerk of the joint convention, testified that he also counted the ballots for the respondent, and that there were twenty-two of them.

Councilman Ensworth, the other teller, did not count the ballots cast for the respondent, but counted those only which were cast for the relator and the blank ballot, and he testified that twenty-two was the number cast for the relator.

N. Brigham Hall, the clerk of the board of common council, testified that he was present when the ballot was taken; that the ballots after being counted were left upon the table which had been occupied by the tellers; that he gathered them up, placed a band around them, put them in his pocket, and took them to his house; that he there counted them and found that there were twenty-three for the relator, twenty-one for the respondent, and one blank.

Those ballots were brought into court, and a large portion of those which were for the relator were identified by members of the court of common council as the votes which they had cast. But Mr. Higgins, the clerk of the convention, testified that the ballots were not left upon the table, but were brushed by him on to the floor or into the waste basket which stood upon the floor.

The relator also introduced twenty-four members of the court of common council, each of whom testified that he voted for the relator. But one of those witnesses must have been mistaken, for it is admitted on all hands that only forty-five members voted upon the ballot for city attorney; that the respondent received at least twenty-one votes, and that there was one blank ballot, so that not more than

twenty-three members could have voted for the relator. The member who voted the blank ballot probably supposed it was a ballot for the relator. This is the only way in which the testimony can be satisfactorily explained.

There is so much doubt about the time when and the manner in which the ballot for the relator discovered by Mr. Mather got into the hat used for a ballot-box that I cannot find as a fact that it was one of the ballots cast by members of the court of common council for city attorney. Besides it would, if allowed and counted, make the whole number of votes forty-six, while no one pretends that more than forty-five votes were cast. I therefore pass that by without further consideration. Upon the whole the evidence is calculated to create some doubt as to the real state of the vote for city attorney, but it is not sufficient to warrant a finding that the count made by the tellers was erroneous.

Assuming then, for the purposes of the case, that there were twenty-two votes for the relator, twenty-two for the respondent, and one blank, was the respondent legally elected by the casting vote of the mayor? Had there been but forty-four members of the court of common council present and participating in the ballot, and the votes cast had been equally divided between the relator and respondent, as the tellers reported, I should entertain no doubt that the casting vote of the mayor would have legally elected the respondent. The charter does not require a majority of all the members elected to the court of common council to appoint a city attorney. It requires only a major vote of the entire court in joint convention assembled. To constitute the entire court of common council, a quorum only of each branch is in my opinion necessary. In the case of *Warnock* v. *LaFayette*, 4 La. An., 419, the power of amotion being conferred upon a city council, to be exercised by a vote of two-thirds of that body, it was considered to give the power of removal to two-thirds of a legal quorum. Two-thirds of the whole number of members composing the council were held not to be required. If, therefore, there had been eight aldermen and sixteen councilmen present and participating in the action of the joint convention on the 15th of April, they would have

constituted the entire court of common council within the meaning of the city charter, and thirteen votes would have been sufficient to elect a city attorney. If the votes of the twenty-four members had been equally divided between the two candidates, the mayor might, in my opinion, have decided the election by his casting vote.

' When there is an odd number of members present and participating in the action of the convention, as there was in this case, it is obvious that there can be no election unless one of the persons voted for receives a majority of the votes of all the members present and participating. Nor can an election be effected in such a case by the casting vote of the mayor, for there cannot be an equal division of the members, and consequently there can be no tie in their votes. But when the number present and participating is an even number, an election may be effected by the votes of one-half of the members with the casting vote of the mayor. Applying these rules to the case before me, the entire court of common council in joint convention assembled at the time the ballot for city attorney was taken, was composed of forty-five members. That number of members was present and participated in the action of the convention. Twenty-three votes were therefore necessary to constitute a major vote of the entire court. The respondent received but twenty-two and consequently was not elected. Had there been twenty-three blank ballots instead of one the twenty-two votes received by the respondent would not have elected him.

The next question raised by the pleadings is whether the relator is entitled to the office of city attorney? It appears from the record of proceedings of the joint convention that an appeal was taken from the decision of the mayor that there was a tie and that the respondent was elected, and the appeal was sustained by the convention. The convention thereupon passed a resolution in the following words:

"*Resolved*, That the declaration by the mayor of a tie vote for city attorney was erroneous, and that this convention now proceed to vote for city attorney by yeas and nays."

And then the following resolution was offered, to wit:

"*Resolved*, That Charles J. Cole be and hereby is appointed

city attorney in and for the city of Hartford for the ensuing year, and until his successor is duly appointed and qualified."

The mayor ruled that this resolution was out of order, but an appeal was taken and sustained by the convention. It was then moved to amend by substituting the name of the respondent for that of the relator, but the amendment was lost. The resolution was then passed by yeas and nays— twenty-five members voting in the affirmative and twenty-two in the negative.

The respondent claims that the court of common council had no power, after his election was declared by the mayor, to take the action which they did, or any other or further action in the matter. It is undoubtedly true that if the respondent had been duly and legally elected the power of the court of common council would have been exhausted. But it appearing from the statement and record of the vote itself that the respondent did not receive the number of ballots required by the charter of the city to elect him, and that the mayor had no right to give the casting vote, and that consequently there had been no legal election of city attorney, it was competent for the court of common council to take the action they did in reference to the declaration of the mayor as to the result of the ballot, and to proceed to vote again by ballot, or otherwise, for the office in question. It would have been more regular for the convention to have rescinded their order that the election should be by ballot before acting upon the resolution appointing the relator, than it was to vote upon the resolution without formally rescinding the order. But that irregularity does not deprive the resolution of any of its force, or impair in any degree or to any extent its validity. The legal effect of the resolution was to rescind the previous order that the election should be by ballot, and that was all that was required. I am, therefore, of opinion that the relator was legally elected to the office of city attorney.

Whereupon it is considered that the respondent, with the said office of attorney of the city of Hartford may in no way intermeddle, but may hereafter be altogether excluded from the same.