## THE STATE *ex rel.* JOHN W. COOGAN *vs.* JOSEPH L. BARBOUR.

A city charter provided that the common council in joint convention should appoint a prosecuting attorney, but gave no direction as to the mode of appointment, and the convention had no power of removal. The convention met for the purpose of making the appointment and voted "to proceed to ballot for a prosecuting attorney." A ballot was taken and the relator had a clear majority of all the votes cast and of the whole convention, and the result was announced by the presiding officer. A member then offered a resolution declaring the relator elected. This resolution was lost. Two resolutions were then offered, one declaring the ballot taken void by reason of errors in it (which it was found did not exist,) and the other declaring the defendant "elected and appointed prosecuting attorney;" both of which resolutions were passed. Held that the convention by its ballot had elected the relator, that no resolution declaring him elected was necessary, and that the later resolutions declaring the ballot void and the defendant elected were of no effect.

[[Argued May 20th—decided June 8th, 1885.]

INFORMATION in the nature of a writ of quo warranto, filed in the Superior Court in Hartford County

The information set forth that it was provided by the law of the state and by the charter and ordinances of the city of Hartford that a meeting of the entire Court of Common Council in joint convention should be holden yearly on the second Monday after the annual city election, for the choice of a prosecuting attorney for the city and of other city officers; that on April 20th, 1885, being the second Monday after the annual city election for that year, a meeting of the entire Court of Common Council of the city was held for the choice of the city officers then to be chosen in joint convention; that the relator was at that meeting duly chosen prosecuting attorney of the city for one year from April 21st, 1885, and had accepted the office and taken the oath of office required by law; but that Joseph L. Barbour of said city had, notwithstanding such election, acceptance and qualification of the relator, on the 22d of April, 1885, without any legal warrant or right, usurped and held pos-

session of and had from that time exercised said office of prosecuting attorney for the city and claimed to be entitled to the office; praying that process of law might be awarded against him requiring him to answer by what right he claimed to hold the office.

Barbour was cited in by the court to show cause, and filed the following answer:

That on the 19th day of April, 1884, said day being the second Monday after the annual city election of the city of Hartford, at a joint convention of the entire Court of Common Council of said city, held in accordance with the charter and ordinances thereof, for the choice and appointment of a prosecuting attorney for said city, and of other officers, for the term of one year and until successors should be appointed and qualified, the defendant, Joseph L. Barbour, was duly chosen and appointed by a major vote of the entire Court of Common Council, so assembled in joint convention, to be prosecuting attorney of said city for one year thereafter and until his successor should be chosen and qualified; and the said Joseph L. Barbour accepted said office, and duly qualified therefor, and entered upon the discharge of the duties thereof, and has ever since continued in the discharge of said duties.

And defendant further saith that at the meeting of the entire Court of Common Council, held April 20th, 1885, as set forth in the information, for the choice and appointment of prosecuting attorney and other officers, a member of said convention moved that the convention proceed to ballot for prosecuting attorney, and the motion prevailed, said motion being the first business proposed in or transacted by said convention relative to said office. A ballot was then taken, and it was announced by the presiding officer of said joint convention that forty-seven ballots had been cast, of which John W. Coogan had twenty five, Joseph L. Barbour had twenty-one, and there was one blank ballot; whereupon a member of said convention offered the following resolution:

"*Resolved*, that John W. Coogan be, and he is hereby declared elected prosecuting attorney in and for the city of

Hartford, for the year ensuing and until his successor is elected and qualified."

The yeas and nays were ordered on the passage of the resolution and it was defeated; twenty-two members of the convention voting in the affirmative and twenty-five members in the negative, and the resolution was declared lost.

A member of the convention then offered the following preamble and resolutions:

" Whereas the yea and nay vote just taken on the resolution relating to the election of prosecuting attorney clearly shows that there was an error in the ballot which was declared to elect John W. Coogan prosecuting attorney:

" *Resolved*, that the aforesaid ballot be and is hereby declared null and of no effect by reason of errors in the same; and

" *Resolved*, that Joseph L. Barbour be, and he is hereby elected and appointed prosecuting attorney in and for the city of Hartford, for the year ensuing and until his successor is chosen and qualified."

Whereupon a member of the convention moved that the convention be dissolved, and a yea and nay vote being ordered and taken, the motion to dissolve the convention was defeated by twenty-two yeas to twenty-five nays.

A member of the convention then moved to table said preamble and resolutions and the motion was defeated by twenty-one votes in the affirmative, and twenty-four votes in the negative. Whereupon the yeas and nays were ordered on the adoption of the preamble and resolutions, and, upon the taking of the vote by yeas and nays, twenty-five of the members of said joint convention voted in favor of said preamble and resolutions and twenty-two of the members voted against them, and said resolutions were thereupon declared passed by the presiding officer of said joint convention, and Joseph L. Barbour was declared elected prosecuting attorney in and for the city of Hartford for the year ensuing and until his successor is chosen and qualified.

And thereupon on motion of a member of said conven-

tion, said joint convention was dissolved and thereafter did not reassemble.

And the defendant says that the twenty-five votes so given as aforesaid for the resolution last recited, constituted a major vote of the entire Court of Common Council, and that thereby he was chosen and appointed prosecuting attorney in and for the city of Hartford, for the ensuing year and until his successor is chosen, and was so declared, and has accepted said office, and being duly qualified has lawfully and of right entered upon, and lawfully and of right continues in, the discharge of the duties of said office.

And so the defendant says that since the 19th day of April, 1884, when as aforesaid he was chosen and appointed prosecuting attorney of the city of Hartford for the term of one year and until his successor should be chosen and qualified, neither the said John W. Coogan nor any other person save the defendant himself has been duly and legally chosen and appointed to said office and qualified therefor as successor to the defendant, but that instead the defendant himself was as aforesaid, on said April 20th, 1885, duly and legally chosen and appointed to said office for the ensuing year and until his successor is chosen and qualified, and has accepted the same, and being duly qualified is legally exercising the duties thereof.

And so this defendant denies that he has ever exercised, claimed, usurped, or now exercises, claims, or usurps any office of prosecuting attorney in and for the city of Hartford, of or rightfully belonging to said relator.

All of which things the defendant is ready to verify as this court shall award, and thereupon he prays that said office, privileges, and franchises may be adjudged to him, and that he may be dismissed by the court of and from the premises charged upon him as aforesaid.

To this answer the State's Attorney filed the following replication :—

That true it is that at said meeting of the Court of Common Council in joint convention, held on April 20th, 1885, proceedings were had and a resolution appointing said Bar-

bour prosecuting attorney was passed, as alleged in said plea; but the said attorney further says that said resolution so appointing said Barbour, passed by said convention after said convention had voted to appoint a prosecuting attorney by ballot, and in pursuance of said vote had taken a ballot, upon which ballot said John W. Coogan received a majority of votes, was passed by said convention without any investigation as to the existence of any errors in the ballot so taken, although the assumed existence of such errors was by said convention declared to be the reason and justification of said resolution; and further says that there was in fact no error whatever in said ballot, but that on the contrary said ballot was a valid ballot, and said Coogan, by the ordering, casting, counting, and declaration of said ballot, was legally elected prosecuting attorney, as alleged in the information; and this the said attorney is ready to verify; wherefore the said attorney prays judgment, and that the said Joseph L. Barbour may be convicted of the said premises.

To this replication the defendant demurred, assigning the following grounds of demurrer :—

1. That it is immaterial whether said ballot was in fact erroneous or not, as said meeting had power notwithstanding the taking said ballot to appoint said Barbour to said office by resolution.

2. That the legal effect of said ballot was not to appoint said Coogan to said office of prosecuting attorney.

3. That the legal effect of the proceedings set out in the answer of the defendant was to appoint said Barbour to said office, whether said ballot was in fact erroneous or not.

The court, (*Andrews, J.,*) overruled the demurrer, and held the replication sufficient, and rendered judgment for the plaintiff.   The defendant appealed.

*C. E. Perkins* and *C. J. Cole*, for the appellant, cited *State ex rel. Miller* v. *Foster*, 2 Halst., 101; *Conger* v. *Gilmer*, 32 Cal., 75; *Attorney Gen.* v. *Simonds*, 111 Mass., 259; *Baker* v. *Cushman*, 127 id., 105; *Putnam* v. *Langley*, 133

id., 204; *State ex rel. Cole* v. *Chapman*, 44 Conn., 595; *Trustees of School District* v. *Gibbs*, 2 Cush., 39; McCrary on Elections, § 444.

*W. Hamersley*, State's Attorney, and *W. C. Case*, for the appellee, cited—*State ex rel. Waterbury* v. *Martin*, 46 Conn., 479; *Thomas* v. *Burns*, 23 Miss., 550; *Taylor* v. *Commonwealth*, 3 J. J. Marsh., 404; *Achley's Case*, 4 Abb., Pr. R., 35; *Marbury* v. *Madison*, 1 Cranch, 137; *People ex rel. Kresser* v. *Fitzsimmons*, 68 N. York, 518; *Hoke* v. *Field*, 10 Bush, 144; *Conger* v. *Gilmer*, 32 Cal., 75; *People ex rel. Mosher* v. *Stowell*, 9 Abb. New Cases, 456; *State ex rel. Cole* v. *Chapman*, 44 Conn., 595; Cushing's Law of Legis. Assemblies, §§ 99, 205; *State ex rel. Wright* v. *Warren*, 1 Houst., 39; Cush., Story and Josslyn's Mass. Controverted Election Cases, 7, 20, 151, 201, 215.

CARPENTER, J. The charter of the city of Hartford provides that the Common Council, in joint convention, shall appoint a prosecuting attorney, but gives no direction as to the mode of appointment. The convention therefore is at liberty to proceed as it pleases, by ballot, by resolution, by the adoption of a verbal motion or in any other manner. In this case a member moved that the convention proceed to ballot for a prosecuting attorney, and the motion prevailed. Thereupon a ballot was taken and the relator had a clear majority of all the votes cast, and of the whole convention. After the result was announced another member of the convention offered a resolution declaring the relator elected. That resolution, on a yea and nay vote, was lost. Two resolutions were then offered; the first declaring the ballot just taken null and of no effect by reason of errors in the same, and the other declaring that Joseph L. Barbour "is hereby elected and appointed prosecuting attorney, &c." These resolutions were passed.

The question is, which of the two candidates was ap-

pointed. The Superior Court held that the relator was appointed, and the defendant appealed to this court.

It will be observed that the business of the convention was limited to making appointments. For all the purposes of this case we may assume that its sole business was to appoint a prosecuting attorney, and that it had no other powers or duties. It had but one thing to do and, when that was done, its powers were exhausted. Unlike legislative bodies convened for purposes of ordinary legislation, it had no power to enact and repeal, and its power to reconsider was very limited, being confined to the preliminary proceedings. The term of office is prescribed by the charter—"for the term of one year, and until his successor is chosen and qualified." The power of removal is not vested in the convention. It follows that when the appointment was once made the title to the office vested in the appointee, and it was not in the power of the convention to take it from him.

The question then is reduced to this—was the relator appointed by the ballot? In behalf of the defendant it is contended that he was not; that the ballot should be regarded as an informal one; that the convention, as appears by its subsequent action, manifestly contemplated and intended that the passage of a resolution declaring the candidate receiving a majority of votes elected, should be the act of appointment; and that until that is done, even until the convention has adjourned, the proceedings are in fieri, and it cannot be said that an appointment has been made.

In behalf of the relator it is contended that the vote of the convention to proceed to ballot for a prosecuting attorney was equivalent to, and must be regarded as, a vote to elect or appoint a prosecuting attorney by ballot; that when the result was announced the appointment was complete, nothing more being required; that the relator thereby acquired a vested right to the office, and that it was not in the power of the convention by its subsequent proceedings to deprive him of it.

We are inclined to think that the view presented by the counsel for the relator is the better one. If the convention had adjourned immediately after the result of the ballot was announced, we think it must be conceded that Mr. Coogan would have been legally appointed. The adjournment would have indicated that the convention regarded its duty as fully performed. But the convention proceeded to consider and vote upon resolutions declaring the respective candidates elected. This proceeding may be accounted for on one of two grounds; first, the convention may not have regarded a resolution as essential to an appointment, but simply as a more formal and orderly declaration of the result. Secondly, that the convention considered the resolution as necessary to an appointment. In the former case it is evident that the resolution would not give efficacy to the ballot nor add to its force and effect. In the latter it is equally apparent that the views of the convention as to the necessity of a resolution would not be conclusive. So that the question remains, notwithstanding the subsequent action, was the result of the ballot a legal election? If that was its effect without the subsequent action, we think it must have the same force with it.

It was doubtless competent for the convention to have determined in advance that the appointment should be made by the passage of a resolution, that the ballot should be an informal one, or that it should be a method of selecting a candidate to be appointed by resolution. In such a case there would have been no appointment prior to the passage of the resolution. But such was not the action of the convention. The vote was, not to take an informal ballot, not to select by ballot a person to be appointed, but to ballot for a prosecuting attorney. The ballot we think was understood and intended to be an election; and an election was an appointment.

We interpret the vote to ballot as equivalent to a vote to elect or appoint by ballot—as a vote determining the method by which the appointment should be made. After the passage of that vote an appointment by any other method

would not have been in order—would not have been accord-
ing to parliamentary usage. If the convention had omitted
the ballot, and made the appointment by resolution without
first rescinding the vote to ballot, it might perhaps have
been a legal appointment, on the ground that there was an
implied rescission, but it certainly would have been irregu-
lar. But that course was not taken. After voting to ballot
a ballot was actually taken which resulted in an election by
a clear majority. Then, without any vote changing the
method, the convention proceeded to pass a resolution
which declared another man elected and appointed. In
addition to the irregularity of not following the prescribed
method, they departed from it after the thing to be done
had been done. The convention decided to appoint and
did appoint by ballot, and then appointed another man by
resolution.

We have said that the appointment was made when the
result of the ballot was ascertained and declared. Nothing
more was required of the convention. Its will had been
expressed in a parliamentary and legal method, had been
duly declared, and had become a matter of record. De-
claring the result by resolution was unnecessary. No certi-
ficate or commission from the convention or its officers was
required by law. Mr. Coogan's right to the office vested
at once, and he might without further ceremony accept and
qualify.

We do not wish to be understood as denying the power
of the convention to correct errors and to nullify the effects
of fraud. If there was a palpable error or fraud, or if the
ballot for any cause was illegal, the convention might un-
doubtedly treat it as void, and proceed to another election.
If we were to look only to the resolutions which passed we
might assume that there was an error in the ballot and so
give effect to the resolution. But the pleadings show that
it was admitted that there was in fact no error or mistake.
The mere declaration that there was an error when there
was none, and the attempt to nullify the appointment on
that ground, cannot be vindicated.

State ex rel. Coogan v. Barbour.

These views are believed to be in harmony with the best and most carefully considered cases. Appointments to office, by whomsoever made, are intrinsically executive acts. It has been so held when the appointment was made by a court. *Taylor* v. *Commonwealth*, 3 J. J. Marsh., 401. Also when made by the common council of a city. *Ackley's Case*, 4 Abbott's Prac. R., 35. And when made by an executive officer. *Marbury* v. *Madison*, 1 Cranch, 137.

When the appointing officer or body has not the power of removal, if the power to appoint has been once exercised it is irrevocable, and the appointee will hold office during the term. *Marbury* v. *Madison, Ackley's Case, supra; Cole* v. *Chapman*, 44 Conn., 601; *Putnam* v. *Langly*, 133 Mass., 204.

An appointment is complete when the last act required of the appointing power has been performed. The signing of a commission by the president of the United States, when the appointment was made by him, and the law required a commission, was held to be the last act. *Marbury* v. *Madison, supra.* Also a writing signed by the mayor of a city making a nomination to be confirmed by the common council, under the erroneous belief that such confirmation was necessary, although it was not required by law. *People* v. *Fitzsimmons*, 68 N. York, 514. In the case of a judicial appointment a declaration in open court, when the law does not require the appointment to be in writing, has been held to be final. *Hoke* v. *Field*, 10 Bush, 144. In *Ackley's Case, supra*, it was held that the appointment was made when both branches of the common council concurred in the passage of a resolution making the appointment. So also in *People* v. *Stowell*, 9 Abbott's New Cases, 456. In *Conger* v. *Gilmer*, 32 Cal., 75, the law required that justices of the peace appointed by the board of supervisors should receive a commission signed by the officers of the board and sealed with its seal; it was held that a commission so signed and sealed was the only evidence of an appointment. If however such formal act is to be performed by some other than the appointing power it constitutes no part of

the appointment. *Marbury* v. *Madison, supra; People* v. *Stowell, supra.* Such formal acts in such cases are mere ministerial acts.

The case of *Marbury* v. *Madison, supra,* is worthy of a more extended notice. In that case nearly all'the important principles involved in this were promulgated by the Supreme Court of the United States in an elaborate opinion by Chief Justice MARSHALL, in which the whole subject is exhaustively considered.

President Adams, under a law of Congress, nominated certain persons to be justices of the peace in the district of Columbia, and the nominations were confirmed by the senate. The law required that the appointees should be commissioned by the president under the great seal of the United States. The appointment was for a term of five years. The president signed the commission and the seal, under the statute, was affixed by the secretary of state, by whom alone it could be affixed. The commission however was not delivered. The persons appointed applied to the Supreme Court for a mandamus to compel its delivery. On a rule to show cause the court held that the appointment was complete, and that the persons therein named were legally entitled to the office ; but discharged the rule on the ground that the cause was not within the jurisdiction of the court.

The opinion shows that in some cases there is a distinction between the acts of appointing to office and commissioning the person appointed. " It follows," say the court, " from the existence of this distinction, that if an appointment was to be evidenced by any public act other than the commission, the *performance of such public act would create the officer,* and if he was not removable at the will of the president, would either give him a right to his commission, or enable him to perform the duties without it." Again— " This is an appointment made by the president, by and with the advice and consent of the senate, and is evidenced by no act but the commission itself. In such a case therefore the commission and the appointment seem inseparable,

it being almost impossible to show an appointment other-
wise than by proving the existence of a commission ; still
the commission is not necessarily the appointment, though
conclusive evidence of it."

It was then held that the appointment was made when
the last act required of the president was performed.  On
this point the court says :—" Should the commission, in-
stead of being evidence of an appointment, even be con-
sidered as constituting the appointment itself, still it would
be made when the last act to be done by the president was
performed, or, at furthest, when the commission was com-
plete.  The last act to be done by the president is the sig-
nature of the commission.  He has thus acted on the advice
and consent of the senáte to his own nomination.  The time
for deliberation has then passed.  He has decided.  His
judgment, on the advice and consent of the senate, con-
curring with his nomination, has been made, and the officer
is appointed.  This appointment is evidenced by an open,
unequivocal act; and being the last act required from the
person making it, necessarily excludes the idea of its being,
so far as respects the appointment, an inchoate and incom-
plete transaction.  Some point of time must be taken when
the power of the executive over an officer, not removable at
his will, must cease.  That point of time must be when the
constitutional power of appointment has been exercised.
And this power has been exercised when the last act, re-
quired from the person possessing the power has been
performed."

The case then holds that affixing the seal to the commis
sion was no part of the appointment, nor was it essential to
its validity, it being a mere ministerial duty to be performed
by a ministerial officer and not by the appointing power.
"It is never to be affixed till the commission is signed, be-
cause the signature, which gives force and effect to the com-
mission, is conclusive evidence that the appointment is
made."

It is then held that the power having been exercised, and
the appointment made, the president could not unmake it

and appoint another, notwithstanding the fact that the commission had not been delivered; and for the reason that the president had not the power of removal. On this point the court say:—" Where an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern, because the act is at any time revocable; and the commission may be arrested, if still in the office. But when the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled. It has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised until the appointment has been made. But having once made the appointment, his power over the office is terminated in all cases where by law the officer is not removable by him."

The case of *Conger* v. *Gilmer*, 32 Cal., 75, is cited and relied on by the defendant. In that case it was decided that, "the appointment to office by the board of supervisors is not complete until the person appointed has received a certificate of his election under the seal of the board, signed by the proper officers of the board. An appointment made by a majority of the board may be revoked at any time before such certificate is issued and another person may be appointed. In the case of an election to office by the people the rule is different, and the issuance of a commission is a mere ministerial act." A statute of California required that the person appointed should receive a certificate of his appointment signed by the officers of the appointing body and sealed with its seal. The court, following the case of *Marbury* v. *Madison*, held that the appointment was not complete until the last act required of the appointing power had been performed; and that the last act was the issuance of a certificate signed and sealed as required by law. A United States statute made the secretary of state the custodian of the great seal and made it his duty to affix it whenever required. When, therefore, it was affixed to commissions issued by the president to complete an appointment made by him it constituted no part of the act of appointing,

but was a mere ministerial act attesting the verity of the presidential signature. In *Conger* v. *Gilmer* the signing and sealing of the certificate were acts to be performed by the board, the appointing power, being performed by its officers and by its immediate direction, and were properly held to be an essential part of the act of appointment—executive and not ministerial acts. So far that case seems to be in harmony with the views we have expressed, and is an authority quite as much in favor of the plaintiff as of the defendant; for in this case it will be remembered that no seal, no certificate, nor any act other than that actually performed, is required from the appointing power.

In that case it will be observed that the second appointment was made some days after the first and at a subsequent meeting. The board doubtless had continuing jurisdiction over the subject matter. But it is not contended that, when the law requires a convention to meet on a given day and make an appointment, the convention may meet on a subsequent day and revoke an appointment made at the time required.

The case of *Baker* v. *Cushman*, 127 Mass., 105, another case cited by the defense, was this:—The aldermen and councilmen, thirty-one in number, met in joint convention to appoint a city clerk. Baker received seventeen votes, but there were thirty-two votes cast. The convention declared the ballot void, and on a second ballot being taken Cushman was elected. The court held that his election was legal, saying that "it was within the lawful power of the convention, at the same meeting, and before the result of the election had been declared, to treat the proceedings already had as irregular and invalid, and to vote anew." In that case there was a reason for setting aside the ballot. It may have been tainted with fraud. If fraudulent, the extent of the fraud could not be known, for several members entitled to vote may have refrained from voting, and several not entitled to vote may have voted; and possibly the fraudulent votes may have been required to make a majority. The convention had a right to insist, and it was due to the ap-

pointee, that there should be a ballot free from any suspicion of fraud. Had there been a similar fact in this case, or any reason for declaring the ballot void, it would have presented a different question. We regard that case as consistent with the position we have taken.

The case of *Miller* v. *Foster*, 2 Halsted (N. Jersey), 101, was, like this, the case of an appointment by a joint convention of two bodies. It consisted of fifty-six members, of which only fifty-five were present and voting. On two ballots Miller had twenty-eight votes, but was not declared elected, the chair ruling that a majority of the whole number was necessary, in which ruling he was sustained.by the convention. Another ballot was taken and Foster received thirty-one votes and was declared elected. The court held that Foster was legally elected. The court interrupted the counsel for the plaintiff with the announcement that their minds were made up, and then said " that all deliberative assemblies during their session have a right to do and undo, consider and reconsider, as often as they think proper, and it is the result only which is done. In this case they had a right to reconsider any question which had been before them or any vote which they had made." We cannot regard that case as an authority controlling or materially influencing our decision, for several reasons. It was hastily decided and manifestly was not well considered. It confounds legislative proceedings with executive acts and applies the rules regulating the former to the latter, while such rules are applicable only to a limited extent. It assumes that the convention had power to *undo* as well as to *do*, to *remove* as well as to *appoint*. That may have been so in that case, while confessedly it is not so in this.

For these reasons a majority of the court holds that there is no error in the judgment of the Superior Court.

In this opinion LOOMIS and GRANGER, Js., concurred.

PARK, C. J.   I regret that I am unable to concur in the views expressed by the majority of the court; and were it not that I am under a strong impression that the decision should be in favor of the defendant, I would silently acquiesce.

Two questions are presented for consideration.   The first is, was the vote by ballot, that was taken at the commencement of the proceedings of the convention, of a character to elect the relator?   If not, then the relator is not entitled to the office of prosecuting attorney of the city, for it is not pretended that he was afterwards elected.   If it was, then the question is—had the convention the legal right to alter, change, or annul the vote that had been taken, at any time during its continuous session, and before its dissolution?   If it had, then the relator is not entitled to the office, for in that case it seems to be conceded that the convention nullified the vote by ballot, and afterwards elected the defendant to the office.

Was the ballot of a character to elect the relator, is the first question in order to be considered.

The vote by ballot was preceded by a vote in the following words—"That the convention proceed to ballot for prosecuting attorney."   There is nothing in this language to indicate whether the vote to be taken by ballot was to be formal or informal.   It is just as consistent with one construction as with the other.   It is ambiguous in this respect, and it becomes important to consider which construction was given to it by the members of the convention when the ballot was taken; for if it was then regarded and treated by them as an informal ballot, law and reason unite in declaring that it was, in fact, such a ballot to all intents and purposes.   There is no necessity for citing authorities in support of this position, for there is no room for controversy. What construction, then, did the members of the convention put upon the balloting?

In the first place the presiding officer of the convention must have regarded it as an informal ballot, or else he would have declared the relator elected after announcing

the resu.t of the vote. The ballot was immediately followed by a resolution declaring the relator elected. What was the necessity of this resolution if he had just been elected? The majority of the court say there was none. Had this resolution passed, the relator would have been elected notwithstanding the character of the ballot. But the resolution was voted down. Two members of the convention, who balloted for the relator, voted against him on the resolution. How can these contradictory acts be reconciled except upon the theory that these members regarded the ballot as informal, and so cast complimentary ballots for the relator, but on the passage of the resolution, knowing it would elect him if passed, voted against him.

This resolution was followed by another declaring the defendant elected to the office of prosecuting attorney. This resolution, after various motions to defeat its passage had been voted down, was passed by a yea and nay vote of the convention.

During all these hotly contested proceedings not a member of the convention suggested even that the relator had been elected by the ballot that was taken at their commencement. All the twenty-two members who voted constantly for the relator during the whole session of the convention, were entirely silent on the subject. This shows conclusively that the members of the convention regarded the ballot that had been taken as merely informal—as of no conclusive effect—as a ballot of no importance whatsoever after any subsequent action of the convention of a contrary character. Why was the passage of the resolution appointing the defendant to the office so strenuously contested unless such had been the fact?

But it is said, that the demurrer in the case admits that the vote by ballot was formal, and that it elected the relator. I do not so understand the demurrer. The replication sets forth that the resolution annulling the vote by ballot on the ground of alleged errors therein, and the resolution electing the defendant to the office, were passed without any investigation by the convention to ascertain whether there

were errors in the ballot or not, when in fact there were none. These are the only allegations of fact in the replication. The rest is made up of claimed conclusions of law arising on the record of the proceedings of the convention. The demurrer admits the truth of these allegations of fact, but the record of the convention must speak for itself, and determine, as a matter of law in connection with these allegations of fact, who was elected prosecuting attorney.

There was no necessity for passing any resolution annulling the vote by ballot. Any act of the convention of a contrary character would have destroyed it, if parliamentary usage had required its destruction. It was doubtless done out of abundant caution to have the proceedings of the convention free from all appearance of irregularity.

I think, therefore, that the record of the convention shows conclusively that the vote by ballot was informal in character, and was so regarded by every member of the convention when it was taken, and that consequently it was not of a character to elect the relator to the office of prosecuting attorney.

But it is said by the majority of the court that the members of the convention may have considered that the passage of a resolution, declaring the relator elected, was necessary in addition to the ballot in order to complete his election; and then they go on to hold that the passage of such resolution was not necessary in fact.

If the members of the convention so believed when they cast their ballots, where lies the difference between a ballot so taken and an informal one? Under such belief every member of the convention might have cast complimentary ballots for the relator without any intention of electing him, but on the contrary with an intention of defeating his election by refusing to pass the necessary resolution. Every member of the convention knew that a vote by ballot was not necessary; that the passage of a resolution declaring a person elected was sufficient, in and of itself, to make an election; for the passage of the resolution declaring the defendant elected was strenuously opposed by every friend

of the relator, though no ballot electing him had been had. They knew the importance of the resolution. They knew that if it passed the defendant would be elected without anything further to be done. And furthermore, all the members of the convention were presumed to know the law,—were presumed to know that any mode of election in this case was sufficient in itself to make a legal election. Wherein then lies the difference between an informal ballot and the one regarded as formal by the majority of the court? In each the voters believe, and act upon the belief, that there will be nothing decisive, nothing final, in the vote they are casting; that, at the most, it will be merely an expression of the views of the convention in regard to candidates. This is all there ever is in an informal ballot; this is all there could be, it seems to me, in the ballot as it is regarded by the majority of the court.

Again, the majority of the court construe the vote " to proceed to ballot for prosecuting attorney " as a vote " determining the mode by which the appointment should be made,"and that only. If the mover of that resolution had simply this object in view when he made the motion, he· was very unfortunate, it seems to me, in the use of language. The word "ballot" does not seem to be an important word in the vote, while the word "proceed" is. One would infer from the language that there had been delay in commencing the proceedings and so a member moved " to proceed," &c. If he had intended to bind the convention to make the election by ballot, it seems to me he would have said, "I move that the election of prosecuting attorney be made by ballot," without any reference to the time when voting should commence. But "proceed to ballot" means, simply, commence to ballot, begin to ballot.

Moreover, it seems clear to me that the convention put no such construction upon the vote they were passing. When the resolution declaring the defendant elected was under consideration by the convention, not a member suggested that it was out of order, that it could not be entertained, that the convention had bound itself to make the

election by ballot, and that too where, seemingly, every motion that ingenuity could suggest to defeat its passage was eagerly resorted to by the friends of the relator to accomplish that result. Is it possible that an objection, so obvious, and withal so manifestly fatal to the passage of the resolution, especially so soon after the convention had otherwise declared, would not have been made, if the members of the convention had understood that they had so bound themselves? I think not.

But suppose the vote by ballot was sufficient, in and of itself, to elect the relator, had not the convention the lawful right to reconsider its action, and elect the defendant during its continuous session on the matter?

The convention had one day, at least, in which to make an election; is it so that the convention unconsciously exhausted its power by a single vote early in its session on that day, so that if every member of the convention had, upon further consideration, desired to reverse its action while the convention still remained in session, and apparently had jurisdiction over the subject matter, it could not have been done? Is hasty and inconsiderate action of this character beyond recall, when all other business a convention may be called to transact may be reconsidered again and again, and changed at pleasure, while the convention remains in session? If this be so it must be conceded that the convention did not know it; for it continued to vote on the subject of the election of prosecuting attorney as long as its session continued, paying no heed to the ballot that had been taken. No good reason can be shown why this should be so, but many good reasons can be given why it should not be. Conventions and all other bodies of men who are intrusted with the election of public officers, should be encouraged to consider well the business they transact.

But this precise question has been before the courts of last resort in three different states of the Union, and each court has fully decided the question, it seems to me, in accordance with the views here expressed. The leading

State ex rel. Coogan *v.* Barbour.

case on the subject is that of *State ex rel. Miller* v. *Foster,*
2 Halsted, 101. This was an information in the nature of
a writ of *quo warranto,* charging that Foster had usurped
the office of clerk of Gloucester County. The facts as
gathered from the pleadings were as follows, and are re-
markably like those of the case at bar. The power to elect
to the office was vested in the Legislative Council and
General Assembly in joint convention. The convention
duly met for the purpose of election. The total num
ber of members of the Council and Assembly was fifty-six,
but only fifty-five were present. A majority *of those
present* only was required to effect a valid election,—
in this case twenty-eight. On the first ballot no person
received a majority. On the second ballot the relator,
Miller, had twenty-eight votes, and the defendant, Fos-
ter, twenty-seven, but the chairman, under the erroneous
impression that a majority of the whole number of mem-
bers, present and absent, was needed, declared that there
was no election, and a third ballot was taken, the relator
again receiving a majority (twenty-eight) of those present,
the defendant having twenty-seven. During the taking of
the fourth ballot a member raised the point that Miller had
been duly elected, but the convention supported the erro-
neous ruling, and the vote proceeded, resulting in thirty-one
for Foster and twenty-four for Miller, and Foster was de-
clared elected, and the convention was thereupon dissolved.
Foster received his commission and entered upon the duties
of the office, and a *quo warranto* information was brought,
at the relation of Miller, to oust him. The pleadings in
the case were the information, answer, rejoinder and de-
murrer to the rejoinder, as in the case at bar.

The Attorney General for the relator contended that
"when a majority of votes had been cast for a candidate
the power of the joint meeting as to the appointment was
at an end. The officer became absolutely entitled to the
office, and was not removable by the joint meeting." It
will be noticed that the argument was the same as made in
the present case. The court interrupted the defendant's

argument, and said :—" Our minds are made up upon a point which we suppose will conclude the question before the court, which is, that all deliberative assemblies, during their session, have a right to do and undo, consider and reconsider, as often as they think proper, and it is the result only which is done. In this case so long as the joint meeting was in session they had a right to reconsider any question which had been before them or any vote which they had taken. In this view of the subject we are inclined to believe that there was nothing illegal or unconstitutional in the proceedings, and that the information cannot be sustained."

It is said, that this case was not well considered, and should not be regarded as authority. Still the Supreme Judicial Court of Massachusetts, in the case of *Baker* v. *Cushman*, 127 Mass., 105, cite this case not only approvingly, but as authority for the doctrine held in that case.

The next case in order is that of *Conger* v. *Gilmer*, 32 Cal., 75. The suit was an information in the nature of a writ of *quo warranto* to determine the title to the office of justice of the peace. The facts were as follows :—The office being vacant the board of supervisors met to make an appointment. On the eighth ballot Conger received a majority and was declared elected. Subsequently a resolution was offered that the appointment of Conger be reconsidered and set aside, which was adopted, and the board then appointed Gilmer, who entered upon the duties of the office, from which Conger, as relator, endeavored to oust him. The relator was successful in the court below, but the defendant brought the case to the Supreme Court, which reversed the decision of the lower court, dismissed the information, and sustained the defendant. I quote from the opinion :

" The only question involved in the case is whether the board of supervisors had the power which they exercised or attempted to exercise, to reconsider and set aside their previous action in relation to the appointment of the relator and direct the clerk not to issue his commission. If they

had, their subsequent appointment of the defendant is valid. Whether they had or not depends upon the nature of the power which is vested in them to fill vacancies— whether the power is that of appointment or election as contra-distinguished from each other. * * * The words 'appointment' and 'election' represent different terms. The people elect; the governor or other functionary appoints. * * * The fact that boards of supervisors, when they exercise the appointing power, do so by first taking a vote, does not affect the character of the power. * * * The board acts by majorities, and in all cases the sense of the board has therefore usually to be ascertained by taking a vote. The will of the board can be ascertained in no other way, and the vote serves that purpose only, and does not convert the power exercised by them from that of 'appointment' to that of 'election.' * * * The power being that of appointment, the next question is, when is the appointment complete ? * * * Has it been made when the president of the board has announced the result of the ballot ? * * * Until the last act has been performed the whole matter is in fieri, and within the control of the person or persons by whom the appointment is to be made, and there is nothing to prevent them from changing their minds and appointing some other person than the one first elected. * * * It results that the board had power to rescind their first action at the time they did so, and further, that the subsequent appointment of the defendant was valid."

It will be seen that this case is strikingly analogous to the case under consideration.

But it is said that this case is as much an authority for the relator as for the defendant, for it virtually holds, it is said, that when the last act constituting an appointment to office has been done, the power of the appointing body over the subject becomes exhausted; and by the law of California the last act is performed when the certificate of appointment is signed and sealed by the officers of the appointing body, and not before. Until such time has arrived, it is conceded that the appointing power may pay no heed to

the votes it may have passed on the subject.    But the question in the case before us is, when was the last act constituting an election or appointment done?    The convention had an entire day in which to make an election or appointment.    If the whole day was consumed in deliberation and voting on the subject, was the last act constituting an election or appointment done when a ballot was taken early in the session on that day, resulting in a majority for the relator?  or was it done when the convention by its dissolution unequivocally showed itself satisfied with its last act in the matter?

In the California case, if a certificate had been given to Conger when he received a majority of votes on the eighth ballot, no one would have questioned his appointment.    So here, if the convention had dissolved when the ballot was taken resulting in a majority for the relator, no one would have questioned his election, if the ballot had been of a character to elect.

In the California case the board had the right to deliberate and change so long as they postponed giving the certificate.    In this case the convention had the same right so long as they continued to deliberate on the subject and refused to dissolve.    In the California case, when the board ceased to deliberate and gave the certificate, they were satisfied with the last act they had done.    So was the convention here, when they ceased to deliberate and voted to dissolve.    There is no difference in principle between the two cases.

The next and last case to be found on the subject is that of *Baker* v. *Cushman*, 127 Mass., 105.    This was a petition for a mandamus, with regard to the office of city clerk in the city of Taunton.    The facts were as follows :—On January 6th, 1879, the eight aldermen and twenty-three councilmen of the city met in joint convention to elect a city clerk and other city officers.    On the first ballot for city clerk, thirty-one members being present, thirty-two votes were cast, the petitioner receiving seventeen, the respondent fourteen, and Laurens Francis one.    The election was de-

clared void, and on a second ballot thirty-one votes were cast, of which the respondent had seventeen and the petitioner fourteen, and the respondent was declared duly elected, and the convention adjourned sine die. The court (GRAY, C. J.,) said:—" Whether we look to the record only, or to the facts found by the judge before whom this petition was heard, it does not appear that there was a complete election of the petitioner to the office of city clerk; but it does appear that the vote by which he appeared to be elected was immediately declared void, and the convention at once proceeded to another vote, in which all the members took part, resulting in the election of the respondent, and he was accordingly declared to be elected. It was within the lawful power of the convention, at the same meeting, and before the result of the election had been declared, to treat the proceedings already had as irregular and invalid, and to vote anew. The petitioner, therefore, acquired no right to the office. *State* v. *Foster*, 2 Halsted, 101. As this view is decisive of the case it is unnecessary to consider the other objections to the issue of a writ of mandamus."

This case is another strikingly like the one in question. But it is said, by the majority of the court, that the first vote taken was tainted with fraud or error, inasmuch as there was one ballot more cast than there were voters, and the convention, therefore, had the right to consider the ballot void, and to so declare. It does not appear whether the extra ballot was cast in fraud or by mistake, but whichever way cast, it did not and could not change the result. The petitioner had at least sixteen honest and valid votes to fourteen for the respondent, and one scattering. Why was he not elected? Is it so that the sixteen honest voters must be deprived of their choice simply because there was one dishonest or careless voter? On the same principle, if in a given case there were one thousand ballots cast—eight hundred of them for *A B* and two hundred of them for *C D*—the eight hundred would be deprived of their choice if it should be found that there was one more ballot cast than there were voters to cast them. Can this be so?

McCrary (on Elections, sec. 444), says :—" It is not a valid objection to an election that illegal votes were received if they did not change the majority." See also *Trustees* v. *Gibbs*, 2 Cush., 39. And furthermore, if the convention in this case had the right to declare the ballot that had been first taken void simply because there was fraud or mistake to the extent of one vote, how much more in the case under consideration had the convention the right to set the ballot aside on the ground that the members cast their ballots believing that the vote would not be final, but that a resolution in addition to the vote would be necessary to be passed declaring the person elected who should receive a majority of the ballots before an election would be made, as a majority of the court say may have been the case. A mistake of this character was not the mistake alluded to in the resolution that was passed, and in the rejoinder to which the demurrer applied. That mistake had reference to certain members voting by mistake for the relator when they intended to vote for the defendant. But the court in Massachusetts put the case upon no such ground. The point is not even suggested in the opinion.

I think therefore that, even if the relator would have been elected by the ballot that was taken if nothing more had occurred, the convention had the right to nullify the ballot and elect the defendant.