Hillsborough, {
Dec. 7, 1914. }

ATTORNEY-GENERAL (*ex rel.* EDWARD B. WOODBURY & a.) *v.* CHARLES W. BICKFORD.

Where a majority vote of the electing body is required for the choice of a municipal officer, it is not necessary that the successful candidate should receive a majority of the votes of those present constituting a quorum; a majority of the votes actually cast is sufficient.

In an election by a municipal body, blank ballots are not to be counted, nor included in the declaration of votes cast.

INFORMATION, in the nature of *quo warranto*, to determine the right of the defendant to the office of superintendent of schools in Manchester. The board of school committee is a municipal body which is authorized and required to elect biennially in the month of June a superintendent of public instruction for the city. The defendant held the office for the term ending July 1, 1914. June 5, 1914, the school board at a regular meeting voted to proceed to

ballot for a superintendent. Thereupon a vote was taken which resulted as follows: Charles W. Bickford, five votes; John Smith, two votes; John Doe, one vote; Blank, three votes. The chairman declared there was no choice. Since that time the defendant has been elected from month to month acting superintendent and has performed the duties of superintendent, claiming that he was legally elected to that office, and has refused to accept the office of acting superintendent. The question of the effect of the above vote was transferred from the September term, 1914, of the superior court by *Branch*, J., on an agreed statement of facts.

*Jones, Warren, Wilson & Manning* (*Mr. Manning* orally), for the plaintiff.

*Taggart, Burroughs, Wyman & McLane* (*Mr. Wyman* orally), for the defendant.

WALKER, J. At the time of the attempted election of a superintendent of schools by the school board, a quorum of the board were present. It then had the necessary legal authority to proceed with the election, and if a candidate for that office had received a majority of the votes cast he would have been legally elected. It is assumed by counsel in argument that a majority vote was necessary for an election, and the case has been considered upon that assumption. But it is not necessary that the successful candidate should receive a majority of the votes of those present constituting the quorum; a majority of the votes actually cast is sufficient. *Attorney-General* v. *Shepard*, 62 N. H. 383. If therefore the three blank ballots are omitted from the count the defendant would be elected, having received five of the eight votes cast. This is in effect conceded by the plaintiff; but it is argued that the three blanks should be counted and included in the declaration of the whole number of votes cast. Upon this theory, the number necessary for a choice would be six and the defendant would fail of election. While it is admitted that the blanks could not be counted as votes for any candidate, the fact of their being cast by members of the board shows, it is claimed, that those members were unwilling to vote for the defendant and that they adopted this method of preventing his election. In other words, it was not an affirmative vote for any one, but a negative expression of their opposition to the election of the defendant, which can only be made

effective by counting their blank ballots in the total of votes cast. This reasoning is not based upon any statute or rule of law of this state, nor upon any by-law or rule governing the action of the school board, and if sound it can only be supported by a judicial interpretation of the meaning of the blank ballots; that is, by the exercise of judicial ingenuity in deciding that a piece of paper upon which nothing is written or printed, which is found in a ballot-box among the votes cast, clearly indicates that the person who deposited it was opposed to the election of the man who might have the most votes. The claim is it should be counted as one of the votes cast, although manifestly it cannot be counted as a vote for any particular person.

This theory in the case of general elections is opposed to the statutory declaration that "blank pieces of paper shall not be counted as ballots." P. S., *c*. 34, *s*. 2. The purpose of the legislature was to exclude blanks from the count because, as it would seem, they are not votes within the meaning of the constitution (*arts*. 26, 30, 32). In *Attorney-General* v. *Colburn*, 62 N. H. 70, 72, it is said that "it may be a question whether a paper containing and intended to contain no evidence of a purpose to vote for some person can be considered as a vote, or be counted as an expression of a voter's choice, and whether a statute forbidding the counting of such papers is anything more than a statement of the meaning of the constitution." But if the statute above quoted is not applicable to this case because it relates only to general elections, as the plaintiff contends, the result is the same. The obvious definition of a vote, as used in reference to elections, includes the expression of a choice of candidates or measures submitted to the voters. "A ballot may be defined to be a piece of paper, or other suitable material, with the name written or printed upon it of the person to be voted for." Cush. Leg. Ass., *s*. 103; Cool. Con. Lim. (7th ed.) 914. Because blank pieces of paper are not votes expressive of a choice, Cooley says (*p*. 921) that "in determining upon a majority or plurality, the blank votes, if any, are not to be counted; and a candidate may therefore be chosen without receiving a plurality or majority of voices of those who actually participated in the election." According to authority, the mere participation in an election determinable by ballot does not render a voter's blank ballot effective in determining the result of the contest.

The argument that such a ballot indicates a purpose of the voter to register his refusal to vote for the successful candidate overlooks

the fact that it is just as indicative of his purpose to concur in the result which the regular ballots disclose. It is difficult to see how it has any more effect upon the result than a refusal to vote, which is regarded, so far as it is important, as an acquiescence in the result. It has no negative effect. What the voter's purpose was is not apparent. It may have been one thing or another. He has not furnished sufficient evidence to enable the court to ascertain it, and the vote cannot be counted. *Murchie* v. *Clifford,* 76 N. H. 99; *Dinsmore* v. *Mayor and Aldermen,* 76 N. H. 187. At an election the question in effect presented to each voter is: For whom will you vote? It is no answer to this question to indicate in some way that the voter will not vote for A B. Such an answer or vote would not be relevant to the question presented. If on the three blanks in this case the voters had written the words "I am opposed to the election of Charles W. Bickford," those ballots could not be counted, because the voters were necessarily required by the pending proceeding to express their direct choice of, not their implied opposition to, a particular candidate. If therefore the blanks could be construed, under the facts of the case, as indicating opposition to Bickford, they could not be counted on the only question before the board, viz., the choice of a superintendent.

Cases which apparently reach a different result upon a somewhat similar state of facts (*State* v. *Chapman,* 44 Conn. 595; *Lawrence* v. *Ingersoll,* 88 Tenn. 52) cannot be followed. They may, however, be distinguishable in some material respects from the present case, and if so they are not in point. The conclusion here reached is supported, in addition to the authorities above cited, by *State* v. *Custer,* 28 R. I. 222, *Murdoch* v. *Strange,* 99 Md. 89, and *State* v. *Clausen,* 72 Wash 409. The defendant was legally elected in June superintendent of schools.

*Petition dismissed.*

All concurred.