J. C. Smith, J.
The charter of the city of Elmira vests in the common council the power of appointing a city chamberlin, whose term of office is fixed at three years. At a regular meeting of the common council, held on the 11th of March, 1879, a- resolution was adopted and entered on the minutes, purporting to appoint the relator to the said office, in the place of J. J. O’Conner, the previous incumbent, whose term had expired. ■ On the same day, the relator took the oath of office before the city clerk and filed the same with that officer. He presented his .bond to the common council at a meeting held on the 14th of March, and at a later meeting, held on the 8th of April, the bond was approved. On these facts the relator rests-his claim to the office.
The charter provides that the mayor shall sign all appointments made by the common council. There is no- express proof that the appointment of the relator was, or was not, signed by the mayor. At the meeting held. on the 14th of March, the common council adopted a resolution, which was entered on the *458 . minutes, purporting to appoint the defendant to the office of chamberlain, in the place of O’ Conner. And at a meeting held on the following day, the council adopted resolutions purporting to rescind the appointment of Mosher, and to confirm the appointment of Stowell. On that day, Stowell took the" oath of office before the city clerk and filed the same with that officer, and on the same day his official bond was approved by the council, and the defendant entered into the office of chamberlain and continues to' hold it under such appointment.
The relator contends that by their action in appointing him to the office, the common council exhausted their power over the subject, and that the subsequent appointment of Stowell was a nullity. The counsel for the defendant concedes the general rule that when an officer discharges a specific duty devolved upon him by law, he cannot afterwards change or revoke his action. But he contends that while the official action is inchoate and incomplete, the power to revoke it exists, and he insists that such was the case in this instance, inasmuch as the appointment was not signed by the mayor.
In my opinion the signature of the mayor was not needed to complete the appointment. The mayor cannot defeat the action of the common council by withholding his signature. His duty in respect to signing appointments is ministerial. The power of choice resides with the common council. The mayor has no part in it, except that he is entitled to a single vote as a member of that body. The duty of signing appointments is outside of his duties as a member of the council.
In respect to the latter, his powers are discretionary ; the former duty is absolute and imperative. When the common council adopted the resolution appointing the relator, its action in respect to the choice of a *459 chamberlain was complete. It had no authority to rescind such action, the appointment being for a definite term, especially after the relator had signified his acceptance of the office,, by taking and filing the oath.
It follows that the subsequent resolutions of the council, purporting to rescind the appointment of the relator, and to appoint the defendant, were nullities. The case differs from that of Marbury v. Madison, 1 Cranch, 158, cited by the defendant’s counsel. There the signing of the commission was part of the duty of the same executive officer who was vested with the power of appointment, and until the commission was signed by him, the act of appointment was not complete.
I am inclined to think that the appointment signed by the mayor would have been competent evidence of the fact of appointment; but it is not the only evidence. The record of the proceedings of the common council is made, by statute, evidence of their action (Charter, § 157; Code Civ. Pro. § 941). The resolution duly entered in the record of proceedings, is sufficient evidence of the appointment.
It is insisted by the defendant’s counsel, that the oath of office taken by the relator was insufficient in two respects. First, that the city clerk had no power to administer it, and secondly, that it is void for want of a venue and jurat.
The chapter of the revised statutes relating to the public officers of the State, other than militia or town officers, contains a section which provides that the oath of office may be taken and subscribed before the officers therein named, including “the clerk of any county or city, except where otherwise provided” (2 R. S. 119, § 22). The charter of Elmira provides that every person elected to any office under said act, hall take the oath of office before the mayor or some *460 officer authorized to take affidavits to be read in courts of justice (L. 1875, c. 370, § 22). The clerk of the city is not so' authorized (Code Civ. Pro. § 842), and was not so authorized when the charter of 1875 was adopted (2 R. S. 284, § 49). But the provision of the charter above referred to does not assume to take away from the city clerk the.power conferred by the. revised statutes upon clerks of cities to administer the oath of office. It does not repeal the former statute pro tanto, nor is it incompatible with it. I think it is to be regarded as cumulative merely, and that the power of administering the oath of office, conferred upon clerks of cities by the revised statutes', still remains (Exp. Heath, 3 Hill, 42-49 ; 4 E. D. Smith, 430).
This view of the question renders it unnecessary to consider whether the clerk has the power, under section 45 of the charter, as is insisted by the relator’s counsel.
The objections to the form of the affidavit rest on the following facts. The affidavit appeared in a book containing several affidavits made by different city officers. The book was produced in court by the city clerk, and he testified that it was a record of the oaths of city officers. The oath of each officer was printed or written separately, and underneath each oath were parallel columns, headed as follows: “Name.” “When elected or appointed.” “When sworn in.” “Before whom sworn.” In the proper column under the oath of the chamberlain, appeared the name of the relator, and opposite were entries in the other columns showing that he was elected or appointed on March 14, 1879, and that he was sworn in on the same day, before M. S. Decker, city clerk. Immediately below the name of the relator was that of the defendant, with similar entries opposite it in each column. Some of the oaths in the book had a venue showing that they were taken in the county of Chemung and city of *461 Elmira, but the oath subscribed by the relator and the defendant had no venue.
Under the circumstances, it is suggested. by the relator’s counsel that the venue stated in the book applies to, and is a part of, • each oath contained in it. But, waiving that point, I think, as the oath does not appear to have been taken out of the jurisdiction of the city clerk, it is not to be presumed that he was guilty of a breach of duty in administering the oath at a place out of the limits of his jurisdiction. The cases of Parker v. Baker, 8 Paige, 428, 430, and Barnard v. Darling, 1 Barb. Ch. 218, are in point. The case of Lane v. Morse, 6 How. Pr. 394, cited by the defendant’s counsel, was a special term case, involving a question of regularity in practice. The plaintiff’s attorney having returned the defendant’s answer on the ground that it was not verified, and having entered judgment as though no answer had been received, it was held that the complaint itself was not verified, the affidavit of verification purporting to have been made before F. L. Durand, commissioner of deeds, and there being no venue to the affidavit, and nothing upon its face to show where it was taken, nor of what place or county Durand was a commissioner. The case is distinguishable from the one in hand, as there was no evidence, aliunde, of the territorial jurisdiction of the officer. So far as the case is in conflict with the two above cited, it does not appear to be supported by authority. Justice Johnson, who decided the case, cites the reporter’s note to Belden v. Devoe, 12 Wend. 225, and Manufacturers’ Bank v. Cowden, 3 Hill, 461, but the; extent to which they appear to go, is that the venue of an affidavit is prima facie evidence of the place where it is taken. The presumption that the oath was administered by the city clerk within the limits of his jurisdiction, is fortified in this case by the fact that *462 the oath is found in a book of records which belongs in his office, and which it is his duty to keep there.
A sufficient jurat is contained, I think, in the entries.in the columns above referred to.
The validity of the resolution appointing the relator is challenged by the defendant’s counsel, on the alleged ground that it was produced by a combination and agreement entered into before the meeting of the council, by eight of the aldermen, constituting a majority of the whole body, the effect of which was, as it is claimed, to bind them in honor to adhere to the relator as their candidate, until mutually released from the obligation.
The argument of the defendant’s counsel is that the' common council is a subordinate official body, having delegated and limited powers, which must be exercised according to law; that it can only act at a meeting of the body, at which all the members are present or of which they are notified ; that the act performed must be the judgment of the body after free discussion and deliberation among themselves; and that the necessary effect of the agreement of the eight members of the body was to prevent all discussion and deliberation in the body itself upon the subject of the appointment.
Were it competent for'the court to inquire into the circumstances which influenced the action of the several members of the common council in the appointment of city officers, I should hold that the alleged, agreement is established by the evidence.. But I conceive that, under the circumstances of this case, the alleged agreement is quite immaterial. All that was done in the council was regular according to the rules of the body, as construed and applied by the presiding officer.
If he erred upon questions of parliamentary-law, certainly no appeal lies from him to the court. *463 It is not alleged that discussion was prevented by-fraud, violence, or disorder, or that by such means any member was excluded from the deliberations of the body. It is not claimed that any agreement was made with the relator or that he was cognizant of the agreement that was made. The extent of- the ground upon which the challenge rests is, that the body did not in fact discuss the subject matter of the resolution of appointment, and thát the majority agreed beforehand that they would not discuss it, by resolving in advance to support the relator. But no member was under any obligation to open his mouth in debate. If, by common consent, a vote had been taken on the resolution without a word of discussion, no one will contend that the silence of the body would have nullified its action: so, too, if the majority who voted for the resolution had kept silent, notwithstanding each member of the minority had spoken often and vigorously against it. If the previous question was in order and could be moved by the majority, as the chairman ruled, it was in the discretion of the majority to determine at what stage of the proceedings it should be moved ; and' as their action in ordering it and in voting for the relator must be assumed to have been, regular under the rules, and no fraud, violence or disorder is imputed to them, it is difficult to see of what consequence it is whether their action was the result of an express agreement or whether such agreer ment was made before- or after the common council met. The question whether the majority properly exercised their discretion in the matter, is political and not judicial; and if they erred, the only remedy rests with the electors of the city, who have the power to choose suitable and fit persons to represent them in the common council.
No precedent for judicial interposition in such a case is cited by the learned counsel for the defendant, *464 whose diligence, I donbt not, would have enabled him to produce authority for his position if it existed in the books. The case of McCardle v. Bates, 29 Ohio, 422, cited by him, is distinguishable from this. That was an action upon an agreement made by the defendants, members of a township board of education, acting-in their individual capacity, to purchase from the plaintiff’s assignor, .apparatus for the" schools of the township, and to ratify such contract of purchase at the next meeting of the board. The court held that the stipulation by the defendants to ratify the' purchase as members of the board was against public policy and therefore void, and that, - as it was an essential part of the agreement, it vitiated the whole. The defendants had judgment. The decision was undoubtedly sound, but I do not see that it has any application to this case. The action was upon the agreement, which, so far as it related to the official action of the defendants, was wholly unexecuted. The agreement was with a third person, and was founded-upon a valuable consideration moving from him.
Here the court is asked to go behind a resolution of the common council, complete, regular, and valid on its face, adopted according to the rules of the body as laid down by its presiding officer, and to declare it a nullity, on the ground that a majority of the body, who voted for the resolution, as they had a perfect right to do, acted in pursuance of a mutual pledge, made before the body met. The bare statement of the case shows that it is not covered by the Ohio decision.
The result of these considerations is that the plaintiffs are entitled to judgment, declaring that the defendant has no right to the office in question, and that the relator and plaintiff, Mosher, is entitled to the same.