WITHERSPOON *v.* STATE *ex rel.* WEST.*      (

(In Banc.   March 2, 1925.)

[103 So. 134.   No. 24544.]

1. EVIDENCE. *For copy or excerpt from journal of Senate deposited with secretary of state to be admissible in evidence it must be certified to by him.*

After the secretary of the Senate has deposited a journal of the Senate with the secretary of state, as required by section 3020, Code of 1906 (Hemingway's Code, section 5408), the secretary of state is the legal custodian thereof, and for a copy of or excerpt from the journal to be admitted in evidence under section 1968, Code of 1906 (Hemingway's Code, section 1628), it must be certified to by the secretary of state.

2. EVIDENCE. STATES. *Confirmation by Senate of Governor's appointment to office, to be effective, must be set forth in Senate Journal; judicial notice is taken of contents of Senate journal confirming Governor's appointment.*

The confirmation by the Senate of an appointment to office by the Governor, to be effective, must be set forth in the Senate Journal, which journal need not be proven when an examination thereof is necessary in a judicial proceeding, but judicial notice of it will be taken by the court.

3. EVIDENCE. *Court may resort to any helpful source of information to acquire knowledge of fact of which it takes judicial notice.*

When a court takes judicial notice of a fact of which it must acquire knowledge, it may resort to any helpful source of information for that purpose, always seeking that which is most appropriate.

4. EVIDENCE. *On taking judicial notice of Senate Journal, court may examine original journal, copy certified to by custodian, or copy published under statutory provisions.*

When judicial notice is taken of the Senate Journal, the court, in order to acquire knowledge of its contents, may examine the original journal, a copy thereof certified to by its custodian, or the copy thereof published under the provisions of section 3020, Code of 1906 (Hemingway's Code, section 5408).

5. EVIDENCE. *Fact that any portion of Senate's proceedings appear in journal not deposited with secretary of state must be shown by competent evidence.*

When the secretary of the Senate has deposited a journal of the Senate with the secretary of state, as required by section 3020, Code of 1906 (Hemingway's Code, section 5408), the court will presume, in the absence of evidence to the contrary, that the journal so deposited with the secretary of state contains a complete record of the proceedings of the Senate for that session, and, if any portion of the Senate's proceedings do not appear therein, but in another journal not deposited with the secretary of state, that fact must be made to appear by competent evidence.

6. APPEAL AND ERROR. *On reversal, if judgment to be rendered appears certain, case will not be remanded for new trial, but supreme court will render final judgment.*

Where the judgment of a trial court is reversed, and it is not necessary because thereof that some matter of fact be ascertained, but the judgment to be rendered appears certain, the supreme court will not remand the case for a new trial, but will render a

final judgment for the party appearing by the record to be entitled thereto. Section 4519, Code of 1906 (Hemingway's Code, section 3195).

7. OFFICERS. *States. Appointment to office is complete on performance of last act required of person or body vested with appointing power; on confirmation of appointment to office by Senate it cannot thereafter revoke confirmation.*

An appointment to office is complete when the last act required of the person or body vested with the appointing power has been performed, and when the Senate, pursuant to a requirement of the Constitution therefor, has confirmed an appointment to office, it has performed the last act required of it relative thereto, and is without power thereafter to revoke the confirmation.

8. PARLIAMENTARY LAW. *Deliberative assembly has right to adopt rules of procedure; when special rules of procedure have not been adopted by deliberative assembly its procedure is governed by general parliamentary law.*

A deliberative assembly has the right to adopt rules of procedure, and, when special rules therefor have not been adopted, its procedure is governed by the general parliamentary law under which all motions whether carried or lost may be reconsidered.

9. STATES. *Senate may adopt and act on rule providing for reconsideration of confirmation of Governor's appointment to office; when Senate's confirmation of Governor's appointment to office becomes final stated.*

Under section 55 of the state Constitution of 1890, which provides that "each house" (of the legislature) "may determine rules of its own proceedings," the Senate may adopt and act on a rule providing for the reconsideration of the confirmation of an appointment to office by the Governor, and such a confirmation does not become final until a motion that it be reconsidered be disposed of adversely or the time therefor has expired without such a motion being made.

10. CONSTITUTIONAL LAW. *Senate's interpretation of power to determine rules of its proceedings should be accepted by courts, unless manifestly wrong.*

An interpretation by the Senate of the extent of the power conferred on it by the Constitution to determine the rules of its own proceedings is not binding on the courts, but should be accepted by them, unless manifestly wrong.

11. OFFICERS. *Commission signed by Governor and attested by secretary of state is prima-facie evidence of regular appointment and confirmation by Senate.*

A commission evidencing an appointment to office, signed by the Governor and attested by the secretary of state, as provided by section 127 of the state Constitution of 1890, is *prima-facie* evidence that the person to whom the commission was issued was regularly appointed and confirmed by the Senate in event such confirmation is required.

12. APPEAL AND ERROR. *If fact necessary to support judgment of trial court was proven by incompetent evidence, case will be remanded for new trial.*

In a case wherein a fact necessary to support the judgment of the trial court was proven by incompetent evidence, the supreme court on appeal thereto will not decide the case as if no evidence of the fact had been introduced, but will remand the case for a new trial so that the fact may be made to appear by competent evidence.

ETHRIDGE, J., dissenting in part.

---

*Headnotes 1. Evidence, 22 C. J., section 975; 2. Evidence, 23 C. J., section 1904; States, 36 Cyc., p. 858; 3. Evidence, 23 C. J., section 2001; 4. Evidence, 23 C. J., section 2001; 5. Evidence, 22 C. J., section 70 (1926 Anno); 6. Appeal and Error, 4 C. J., section 3230; 7. Officers, 29 Cyc., p. 1372; States, 36 Cyc., p. 858; 8. Parliamentary Law, 29 Cyc., p. 1687; 9. States, 36 Cyc., pp. 849, 858; 10. Constitutional Law, 12 C. J., section 388; 11. Officers, 29 Cyc., p. 1373; 12. Appeal and Error, 4 C. J., section 3238.

APPEAL from circuit court of Washington county.

HON. S. F. DAVIS, Judge.

*Quo warranto* by the state, on the relation of Waddy West, to try the right of S. F. Witherspoon to the office of Commissioner of Mississippi Levee District. From the judgment removing respondent from office, he appeals. Reversed and remanded.

*R. B. Campbell, J. M. Cashin* and *Ernest Kellner, Jr.,* for appellant.

I. As to the error of the court below in overruling the demurrer to the information: See section 3018, Hemingway's Code.

II.  As to the error of the court below in admitting in evidence certain alleged extracts from the executive journal of the Senate: Section 55, Constitution of Mississippi; Section 5408, Hemingway's Code; Section 7476, Hemingway's Code; Section 1628, Hemingway's Code; Jones on Evidence, (3 Ed.), sec. 117; *Green* v. *Weller,* 32 Miss. 650; *Swan* v. *Buck,* 40 Miss. 268; *Ex Parte Wren,* 63 Miss. 512; U. S. Rev. Stat., section 895; U. S. Comp. Stat., sec. 1508; 3 Fed. Stat. Ann., 895.

III.  Presumption arising from the commissions introduced by appellant and by appellee: *State ex rel., Ard* v. *Bankston,* 23 La. Ann. 375.

IV.  As to burden of proof upon relator: 72 R. C. L. 716; 1917-B Ann. Cas. 467; *Anderson* v. *State,* 69 Miss. 740, 13 So. 853; 1914-C Ann. Cas. 483.

V.  As to error of the court below in admitting exhibit "C," alleged rules of the Senate of 1924: Jones on Evidence (3 Ed.), sec. 543; Jones on Evidence (3 Ed.), sec. 526, and authorities cited in Note 83.

VI.  As to the right of the Senate to reconsider the confirmation of appointment of a levee commissioner: Section 231, Constitution of Mississippi; Section 175, Constitution of Mississippi; 1914-D Ann. Cas. 304; 17 Ann. Cas. 1011; 19 Ann. Cas. 823; *Marbury* v. *Madison,* 1 Cranch, 285, 2 L. Ed. 135 and cases cited in Rose's Notes in that case; *State* v. *Wadhams* (Minn.), 67 N. W. 64; *State* v. *Barbour,* 22 Atl. 686, 22 R. C. L. 423-4; *State ex rel. Whitney* v. *Van Buskirk,* 40 N. J. L. 463; *Re Fitzgerald,* 88 App. Div. 434, 84 N. Y. 1125; 22 Cyc. 341; 2 McQuillin Mun. Corp., sec. 614; 2 Dill. Mun. Corp. (5 Ed.), sec. 529, p. 858; *People ex rel. Laise,* 251 Ill. 527, 36 L. R. A. (N. S.) 1203, 96 N. E. 346; *State ex rel. Calderwood* v. *Miller,* 67 Ohio 436, 78 Am. St. Rep. 739, 57 N. E. 227; *State* v. *Phillips,* 79 Me. 506, 11 Atl. 274; *People*

*ex rel. Mosher* v. *Stowell*, 9 Abb. N. C. 456; *State ex rel. Barwick* v. *Tyrell*, 158 Wis. 425, 149 N. W. 280, 1916-E Ann. Cas. 270; *State ex rel. Coogan* v. *Barbour*, 53 Conn. 76, 55 Am. St. Rep. 65, 22 Atl. 686.

*Boddie & Farish* and *Clements & Wright*, for appellee.

I.   On overruling of demurrer and competency of testimony offered, see, section 3012, Hemingway's Code; Section 1628, Hemingway's Code; Section 38, Constitution of Miss.; *Monette* v. *State*, 44 So. 989; Section 5408, Hemingway's Code; *Green* v. *Weller, et al.*, 32 Miss. 650; *Turnipseed* v. *Hudson*, 50 Miss. 429; *Adams* v. *Standard Oil Co.*, 97 Miss. 908.

II.   On which of two commissions is presumptively valid, see, *Dubuc* v. *Voss*, 19 La. Ann. 210, 92 Am. Dec. 526.

III.   On right of Senate to reconsider confirmation of appointments, Section 55, Constitution of Mississippi; Rules 11, 13, 40, 41, 42, 43 of the Senate of Mississippi, 1924 Session; *Dust* v. *Oakman*, 126 Mich. 717, 86 Am. Rep. 574, 86 N. W. 151; *Ex rel. McMahon* v. *Davis*, 284 Ill. 439, 2 A. L. R. 1650, 120 N. E. 326; *Crawford* v. *Gilchrist* (Fla.), 59 So. 963; *Allen* v. *Morton*, 94 Ark. 405; *Baker* v. *Cushman*, 127 Mass. 105; *Pulman* v. *Langley*, 133 Mass. 204; *Wood* v. *Cutter*, 138 Mass. 149; *Reed* v. *Deerfield*, 176 Mass. 473; *Whitney* v. *Van Buskirk*, 40 N. J. L. 467; *Conger* v. *Gilmer*, 32 Cal. 79.

IV.   On the right of Gov. Russell to issue commission while a motion to reconsider pending, see, 22 R. C. L. 433; *State* v. *Bowden*, 92 S. C. 393, 75 S. E. 866.

V.   On right of Gov. Whitfield to withdraw appointment from Senate consideration.   Clearly the governor had the right to withdraw these appointments with the

consent of the Senate, if he had a right to refuse to issue the commission after the Senate had acted; and this cannot be questioned, because mandamus does not lie to compel the governor to sign or issue a commission and for this reason it still remains in the power of the governor, even though the Senate had reconfirmed the appointment, to have nullified the action of the Senate by refusal to issue the commission. And this court would have been powerless to have compelled him to do so.

We have carefully searched the law books that we own and the books of the state Library, but have been unable to find where the question of withdrawal of this kind has ever been directly and in point decided by any court, and we unhesitatingly say that the direct point has never been passed upon by a court and apparently is one of first impression, and it is up to this court to "blaze the trail" on this point. However, in addition to the authorities hereinbefore cited, showing that the appointing power as long as they are in control and possession of the appointment, may deal with it as they may see fit. We are not without precedent on the point. U. S. Senate Rule 38.

We have made a careful examination of the Congressional Records and we find in almost every volume of every session where appointments have been made by the President, that from time to time he has withdrawn from consideration of the senate certain appointments. Vol. 43, Part I, p. 812, of the Second Session of the 60th Congress, he withdrew from the Senate January 12, 1909, two appointments. Vol. 42, Part I, of the First Session of the 60th Congress, pp. 303, 354, 642, 929.

Argued orally by *R. B. Campbell,* for appellant, and *H. P. Farish* and *W. H. Clements,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an information in the nature of a *quo warranto* to try the right of the appellant to the office of commissioner of the Mississippi levee district.

It appears from the pleadings and competent testimony that the appellant was appointed and commissioned as the commissioner of the Mississippi levee district for Washington county by Governor L. M. Russell on January 23, 1924, and that on April 5, 1924, the relator was appointed and commissioned to the same office by Governor H. L. Whitfield, who in the meantime had succeeded Governor Russell, whose term had expired. The appellant and the relator each executed proper official bonds and subscribed to the required oath of office.

The relator introduced in evidence a certified copy of certain pages of the executive journal of the Senate of the state of Mississippi for·the session of 1924, certified to by the secretary of the senate, from which it appears that the appellant was appointed by Governor Russell and a resolution confirming his appointment was adopted by the Senate in a secret executive session on January 18, 1924. The ban of secrecy was removed from this executive session, but no order was made directing that the Governor be notified of the vote on the appellant's confirmation. On January 30, 1924, within the time fixed by the rules of the Senate therefor, the vote by which the resolution confirming the appellant's appointment was adopted was reconsidered by the Senate, and with its permission the appellant's name was withdrawn from the Senate by Governor Whitfield, who had then succeeded Governor Russell as Governor of the state of Mississippi and who thereupon appointed the relator, Waddy West, as commissioner of the Mississippi levee district for Washington county, which appointment the Senate confirmed.

This evidence was introduced over the objection of counsel for the appellant, the judge of the trial court stating that, while he was of the opinion that the excerpt from the journal of the Senate should be certified to by the secretary of state, he was also of the opinion that the court could take judicial notice of the contents of the journal. A certificate by the secretary of state was

introduced by the appellant, from which it appears that the journal of the Senate for the session of 1924 was deposited with him by the secretary of the Senate pursuant to the provisions of section 4638, Code of 1906 (Hemingway's Code, section 7476), and that it "contains no reference to the appointment or confirmation of the appointment of either S. F. Witherspoon or Waddy West as members from Washington county, Miss., of the board of Mississippi levee commissioners."

The case was tried by the judge of the court below by agreement, without a jury, and on this evidence a judgment was rendered removing the appellant from office.

Among the appellant's contentions are:

(1) The excerpt from the Senate's journal certified to by the secretary of the Senate was not admissible in evidence, and the court below should not have taken judicial notice of the Senate's journal.

(2) Conceding the competency of the evidence thereof, the Senate was without power to reconsider the vote by which it adopted the resolution confirming the appointment of the appellant as commissioner; consequently evidence that the Senate did reconsider that vote could not affect the right of either the appellant or the relator to the office, and therefore is wholly irrelevant and immaterial.

(3) There being no competent evidence of what occurred in the Senate with reference to the appointment of either the appellant or the relator, the court below should have presumed that the commission issued to the appellant by Governor Russell was issued pursuant to a confirmation of his appointment by the Senate, and, being prior in time to that issued by Governor Whitfield to the relator, the court should have rendered judgment thereon for the appellant.

(4) If correct in either of the last two propositions, the judgment of the court below should not only be reversed but judgment final should be rendered here for the appellant.

Section 231 of the Constitution provides for an appointment of levee commissioners by the Governor "subject to the confirmation of the Senate."

Section 127 of the Constitution provides that—"All commissions shall be in the name and by the authority of the state of Mississippi, be sealed with the great seal of state, and be signed by the Governor, and attested by the secretary of state."

Section 55 of the Constitution provides that—"Both houses [of the legislature] shall, from time to time, publish journals of their proceedings, except such parts as may, in their opinion, require secrecy," etc.

Sections 3019 and 3020, Code of 1906 (Hemingway's Code, sections 5407 and 5408), provide that—"The secretary of the Senate and clerk of the House of Representatives shall keep a correct journal of the proceedings of their respective houses,"—and: "Within ten days after the adjournment of the legislature, shall furnish to the board of public contracts a true copy of the journals of their respective houses, for publication, and shall file the original journals in the office of the secretary of state."

Section 4638 et seq., Code of 1906 (Hemingway's Code, section 7476 et seq.), designate the secretary of state as the custodian of the journals of the Senate, and provide for the distribution by him of the printed copies thereof.

Section 1968, Code of 1906 (Hemingway's Code, section 1628) provides that—"All public officers in this state having the charge or custody of any public books, records, papers, or writings, are authorized to certify copies of the same, which copies shall be received in evidence in all cases where the original or a sworn copy would be evidence."

This case was tried in the court below more than ten days after the adjournment of the 1924 session of the legislature; consequently the legal custodian of the Senate Journal for that session is the secretary of state, and therefore, in order for a certified copy thereof to be

admissible in evidence without further proof, the certificate must be signed by him.    The excerpt from the journal of the Senate certified to by its secretary was therefore not admissible in evidence, and should not have been examined by the court for information as to what occurred in the Senate, unless competent for that purpose under the judicial notice rule.

A Senate can speak only through its journal, and a confirmation by it of an appointment to office by the Governor to be effective must be set forth in its journal; consequently its journal not only may be but must be examined therefor.    (*Green* v. *Weller,* 32 Miss. 650; Id., 33 Miss. 735; *Ex parte Wren,* 63 Miss. 512, 56 Am. Rep. 825), for which purpose courts will take judicial notice thereof (*Adams* v. *Standard Oil Co.,* 97 Miss. 879, 53 So. 692).

Notice and knowledge, however, are different things, and, when a court takes judicial notice of a fact it must acquire knowledge thereof in order to act upon it.    This knowledge the court can acquire without being restricted in so doing by the rules of evidence "from any source of knowledge which he feels would be helpful to him, always seeking that which is most appropriate, including public official documents or records of all kinds. . . . He may resort to any public document properly authenticated, or to government publications, dictionaries, encyclopedias, geographies, or other books, periodicals, and public addresses."    23 Corpus Juris, 169; 1 Jones on Evidence, 641; *Rodgers* v. *Kline,* 56 Miss. 808, 31 Am. Rep. 389; *Puckett* v. *State,* 71 Miss. 192, 14 So. 452.

In order to inform itself of the contents of the journal of the Senate, the court below had the right to examine the original journal, a copy thereof certified to by its custodian, the secretary of state (*Puckett* v. *State, supra*), or the copy thereof published under the provisions of section 3020, Code of 1906 (Hemingway's Code, section 5408).    But it is said that the journal of the Senate filed with the secretary of state and published under the

statute is incomplete, in that it does not contain the record of those matters which occurred in the Senate while in secret or executive session. We have been unable to find any statute or constitutional provision requiring the keeping of a separate journal of the Senate's secret or executive proceedings, or any order of the Senate at its 1924 session directing that any portion of its proceedings be withheld from publication. Section 3020, Code of 1906 (Hemingway's Code, section 5408), hereinbefore referred to, expressly requires the journals of the two legislative houses to be filed with the secretary of state, and we must presume that the secretary of the Senate complied therewith, and that the journal delivered by him to the secretary of state contains a complete record of all of the Senate's proceedings. If the journal is incomplete, or if there exists a separate journal of the secret or executive sessions of the Senate which the secretary of the Senate has not delivered to the secretary of state, that fact cannot be judicially noticed, but it must be proven in accordance with the rules of evidence. Had the secretary of the Senate not complied with this statute by delivering the journal to the secretary of state, or had the secretary of state declined to receive it, a different question would arise, and it may be that in that event the journal of which the court could take judicial notice is that remaining in the hands of the secretary of the Senate, as did the supreme court of New Mexico in the case of *Earnest* v. *Sargent,* 20 N. M. 427, 150 P. 1018, as to which, however, we are not here called on to express an opinion.

It follows from the foregoing views that the court below was in error in admitting the excerpt from the journal of the Senate certified to by its secretary, either on the theory that it was competent evidence or could be examined by the court under the judicial notice rule.

Coming now to the appellant's contention that the Senate was without power to reconsider the vote by which it adopted the resolution confirming the appointment

138 Miss.—21.

of the appellant as Commissioner: If the Senate is
without power to reconsider a vote by which a resolu-
tion confirming an appointment by the Governor to office
was adopted, then, if the Senate adopted a resolution
confirming the appellant's appointment by Governor Rus-
sell, it will avail the relator nothing to prove that the
vote by which that resolution was adopted was recon-
sidered by the Senate, and that the relator was there-
after appointed and confirmed. Consequently, to re-
mand the case to the court below for a new trial in order
that the relator might prove those facts would be to do
a vain and useless thing so that, if it appears from this
record by evidence or matter of which the court can take
judicial notice that the appellant's appointment was con-
firmed by the Senate, then he is entitled to the office, and
a judgment final to that effect should be rendered here.
Section 4519, Code of 1906 (Hemingway's Code, section
3195).

The contentions of counsel for the appellant in this
connection in substance are: (1) An appointment to
office is complete when the last act required of the person
or body vested with the appointing power has been per-
formed. (2) When the Senate has confirmed an appoint-
ment to office, it has performed the last act required of it
relative thereto, and it is without power to thereafter
revoke its confirmation. Both of these contentions are
undoubtedly correct, and to cite authority therefor would
be supererogatory.

The question then presented is, Did the Senate con-
firm the appellant's appointment? Or, to express it
differently, Was the affirmative vote on the resolution
confirming the appellant's appointment final? For, un-
less that vote was final, the confirmation remained *in fieri*
and subject to the control of the Senate.

Deliberate assemblies, in order that the will of a ma-
jority of its members may be ascertained and registered
in an orderly way, must, *ex necessitate rei,* be governed
by rules of procedure to which each member thereof must
conform. In the absence of special rules of procedure

adopted by such an assembly, or for it by an outside power having the right so to do, its procedure is governed by the general parliamentary law, 29 Cyc. p. 1687; Robert's Rules of Order, Revised, p. 15, one of the rules of which is that, when a motion has been made and carried or lost, it may be reconsidered on a motion therefor by a member of the assembly who voted with the prevailing side made "on the day the vote to be reconsidered was taken, or the next succeeding day, a legal holiday or recess not being counted as a day." Robert's Rules of Order, Revised, p. 156.

"All deliberative assemblies, during their session, have a right to do and undo, consider and reconsider, as often as they think proper, and it is the result only which is done."

This was said in 1823 by the supreme court of New Jersey in *State* v. *Foster,* 7 N. J. Law, 101, at-page 107, wherein was involved the right of the state legislative council and General Assembly in joint meeting to reconsider a vote by which an appointment to office was claimed to have been made; the court further saying:

"In this case, so long as the joint-meeting were in session, they had a right to reconsider any question which had been before them, or any vote which they had made."

See, also, *Crawford* v. *Gilchrist,* 64 Fla. 41, 59 So. 963, Ann Cas. 1914B, 916.

The solution of this question, however, does not depend on the general parliamentary law or the power which deliberative assemblies ordinarily have to adopt rules of procedure, for the power to adopt such rules is expressly conferred on the Senate by section 55 of the Constitution, which provides that—"Each house may determine rules of its own proceedings."

Among the rules of the Senate adopted by it pursuant to the authority conferred on it by this section of the Constitution and in force January 30, 1924, are the following:

"Rule 40. When a question has been once made and carried in the affirmative or negative, it shall be in order

for a Senator voting with the prevailing side to move a reconsideration thereof; but, where the yeas and nays have not been had, this restriction shall not prevail; any Senator may·make the motion to reconsider.

"Rule 41.   No motion to reconsider a vote shall be entertained unless it be made on the same day on which the vote was taken or on the next day on which a quorum is present.

"Rule 43.   Nominations approved or rejected by the Senate shall not be returned by the secretary of the Senate to the Governor or other officer until the expiration of the next executive session, unless it be the last day of the session; or while a motion to reconsider is pending, unless otherwise ordered by the Senate."

Published Journal of the Senate of the state of Mississippi for 1922, at page 1842.

Rule 43, above set out, was amended on February 6, 1924, some days after the vote on the resolution confirming the.appellant's confirmation was reconsidered.   This amendment, however, adds nothing here material to the rule as it existed on January 30, 1924.

Counsel for the appellant concede the power of the Senate to "determine rules of its own proceedings" as to legislative matters, but seek to limit its power so to do in matters of an executive character, but the Constitution, to which alone we should look in this connection, contains no such limitation.   How this section of the Constitution can be construed so as to exclude from it the right of the Senate to determine rules of its own proceedings in transacting business of an executive character is not apparent, for the words in which the grant of power to the Senate to adopt rules of procedure is couched are about as broad and comprehensive as the English language contains, and this court is without the right to ingraft any limitation thereon.

The legislature is a co-ordinate department of the government, and each house thereof is supreme in its own sphere, and no other department of the government

has the right to interfere therewith. No reason is given for the distinction here sought to be drawn between the power of the Senate to reconsider a vote on a matter of legislative character and its power to reconsider a vote on a matter of an executive character, and it is believed that no sound reason therefor can be given. Of course, as hereinbefore stated, when the Senate confirms an appointment made by the Governor, it is without power thereafter to revoke the confirmation, but under the rules of the Senate which the Constitution authorized it to adopt no vote on the confirmation of an appointment to office is final, and consequently there is no such confirmation until a motion to reconsider an affirmative vote thereon has been disposed of adversely or the time for the making thereof has expired without such a motion being made.

The provision of section 55 of the Mississippi Constitution that "each house may determine rules of its own proceedings" was taken *verbatim* from article 1, section 5, of the Constitution of the United States, and, when the present Mississippi Constitution was adopted, there was, and still is, in force a rule of the Senate of the United States which provides that:

"Section 3. When a nomination is confirmed or rejected, any Senator voting in the majority may move for a reconsideration on the same day on which the vote was taken, or on either of the next two days of actual executive session of the Senate," etc.

"Section 4. Nominations confirmed or rejected by the Senate shall not be returned by the secretary to the President until the expiration of the time limited for making a motion to reconsider the same, or while a motion to reconsider is pending, unless otherwise ordered by the Senate."

Rule 38, sections 3 and 4, of the United States Senate, which will be found on page 38 of the Senate Manual containing the standing rules and orders of the United States Senate, prepared under direction of the Senate Commit-

tee on Rules, Sixty-Third Congress, and published in 1915.

While the interpretation put upon this clause of the two Constitutions by both the national and state Senates is not binding on the courts, it is, to say the least, very persuasive as to its correctness, and should not be departed from, unless manifestly wrong. And that can hardly be here said in view of the following authorities which support the right of a Senate to reconsider an affirmative vote on the confirmation of an appointment to office: *Attorney-General* v. *Oakman,* 126 Mich. 717, 86 N. W. 151, 86 Am. St. Rep. 574; *People* v. *Davis,* 284 Ill. 439, 120 N. E. 326, 2 A. L. R. 1650; *Allen* v. *Morton,* 94 Ark. 405, 127 S. W. 450; *Baker* v. *Cushman,* 127 Mass. 105; *Putnam* v. *Langley,* 133 Mass. 204; *Wood* v. *Cutter,* 138 Mass. 149; *Reed* v. *Deerfield,* 176 Mass. 473, 57 N. E. 961; *State* v. *Foster,* 7 N. J. Law, 101; *Whitney* v. *Van Buskirk,* 40 N. J. Law, 467; *Conger* v. *Gilmer,* 32 Cal. 75.

This brings us to the appellant's third contention that, there being no competent evidence of what occurred in the Senate with reference to the appointment of either the appellant or the relator, the court below should have presumed that the commission issued to the appellant by Governor Russell was issued pursuant to a confirmation of his appointment by the Senate, and, being prior in time to that issued by Governor Whitfield to the relator, the court should have rendered judgment thereon for the appellant.

The appellant's commission is *prima-facie* evidence that he was regularly appointed and confirmed by the Senate, and, if his commission were the only evidence which the court below had before it of his appointment and confirmation, he would have been entitled there and would be here to a judgment in his favor. A journal of the Senate which was in session when the appellant was appointed by Governor Russell, and by which he must have been confirmed, if at all, was deposited as hereinbefore set forth by the secretary of the Senate with the

secretary of state, of which journal, as also hereinbefore set forth, the court will take judicial notice, and must presume, in the absence of evidence to-the contrary, that it contains all of the proceedings of the Senate. It appears from that journal, and the court was informed of that fact by the certificate of the secretary of state introduced by the appellant himself, that the Senate did not confirm the appellant's appointment. Consequently, should we render a final judgment here on the competent evidence now before us, we should be compelled to hold that the commission issued to the appellant by Governor Russell is void. Unless it be made to appear that the Senate Journal deposited with the secretary of state is incomplete, and that another portion of its journal exists from which it appears that one of them was regularly appointed and confirmed, neither the appellant nor the relator is entitled to the office. No final judgment adverse to the relator can be rendered here on any theory for the reason that, if on another trial, as hereinbefore set forth, the excerpt from the Senate Journal herein held incompetent should be properly authenticated or proven, the relator will be entitled to the office. The record simply presents a case wherein a fact necessary to support the judgment rendered was proven or made to appear by incompetent evidence, and in such a case the supreme court on appeal thereto should not decide the case as if no evidence of the fact had been introduced, but should remand the case for a new trial so that the fact may be made to appear by competent evidence. This, in so far as we are aware, is the universal rule, the justice of which is apparent here, for it is manifest that the excerpt from the Senate Journal here held to be incompetent because not properly authenticated or proven can be properly authenticated or proven on another trial.

It follows from the foregoing views that the judgment of the court below must be reversed and the case remanded.

*Reversed and remanded.*

ETHRIDGE, J. (dissenting in part). While agreeing that the case should be reversed and remanded because of the error of the court in admitting the certificates of R. L. Brown, secretary of the Senate, as to certain entries purporting to be entries of the journal of the Senate, I am unable to agree with some of the pronouncements in the opinion.

When I first considered the case I thought the judgment should be affirmed because in my view the last commission took precedence over the first commission because the law presumes that the appointing power properly acted. In other words, the law presumes in favor of the validity of the official action of the Governor and other officers, and this presumption extends to presuming a condition to have arisen after the first appointment warranting the second, and that still is my view if the question were determinable by the commissions alone. However, in the record is a certificate from the secretary of state saying that the journals filed in his office do not show any action on the part of the Senate with reference to the confirmation of either of the officers. Under the sections of the Constitution quoted in the majority opinion the confirmation of the Senate is essential to the validity of an appointment where it is made during a session of the Senate. The appointment of the plaintiff was made on April 4, 1924, and the legislature adjourned on April 12, 1924. Therefore the Senate was in session at the time the appointment was made, and the failure of the Senate to confirm would be fatal to the claim of the relator as failure to act would be equivalent to a rejection, and the plaintiff must recover on his own right to the office.

If there were any executive journal or other journal than the one filed in the secretary of state's office it is required to be filed there by section 3020, Code of 1906 (Hemingway's Code, section 5408), which provides:

"The secretary of the Senate and clerk of the house of representatives, within ten days after the adjourn-

ment of the legislature, shall furnish to the board of
public contracts a true copy of the journals of their re-
spective houses, for publication, and shall file the orig-
inal journals in the office of the secretary of state; and
shall also deliver to the secretary of state, immediately
on adjournment, every document and paper relating to
the proceedings of the legislature.''

Under this act the journal and all other documents and
papers relating to the Senate's proceedings are required
to be filed with the secretary of state, and he is the
legal custodian of such journals, documents, and papers.

The provision of the Constitution that the Senate shall
keep a journal of its proceedings which it shall from
time to time publish, except such part as may require
secrecy, does not authorize the withholding from the cus-
tody of the secretary of state of any part of the senate
journal, but it does authorize the Senate not to publish
such parts of the journal of the Senate as in its judg-
ment would injuriously affect the welfare of the state.

The Senate Journal is a document that might be im-
portant to the rights of the citizens or to particular per-
sons or corporations in many instances, and such litigant
would ordinarily have the right to inspect the journal
and to procure it or a copy of it to be used in evidence.
It would be necessary for some person to be custodian
of the journal, including the secret part of the journal,
and the secretary of the Senate under the law has no
right to retain its custody or control after ten days after
the adjournment of the legislature.

It is familiar learning that only the legal custodian
of a record can give a certificate of its contents, and it
was clearly erroneous to admit the certificate of the sec-
retary of the Senate.

I fail to see how the journal is going to be corrected
so as to include an alleged secret or executive part of it.
In other words, it was the duty, of the secretary of the
Senate to turn over to the secretary of state the entire
journal, and to have a copy of all of it published, unless

the Senate itself ordered certain parts not to be published, and as the journal so filed becomes a record it would not be permissible in my judgment to change its contents so as to add to or subtract from it at the instance of any person after it was formally approved and certified to the secretary of state by the proper officers.

I disagree with the view that the courts will take judicial notice of the journal of the Senate or other legislative journal. There is a conflict in the decisions of the country upon this subject, and probably the majority of the states hold that the court will take judicial notice of the journals.

In 7 Encyclopaedia of Evidence, p. 991, it is said: "Many courts hold that they will take judicial notice of the journals of the legislature, at least in so far as is necessary to determine the validity and constitutionality of the laws. And the same rule has been applied to the journals of a city council. Some courts, however, refuse to notice such journals."

In the list of cases cited under this last proposition the case of *Green* v. *Weller*, 32 Miss. 650, is cited as aligning Mississippi with that view. In the case of *Green* v. *Weller*, 32 Miss., at pages 686 and 687, the court, after discussing the legislative records and the fact that the court would take judicial notice of the Constitution as a fundamental and of its requirements, said:

"But if it was competent to show by extrinsic evidence that an act, verified and attested and enrolled according to the forms of the Constitution, had not been passed as it appeared by the record to have been passed, yet this court cannot take judicial notice of the journals of the legislature in order to ascertain the true state of facts.

"In England, the journals of the lords and commons, which are kept as memorials of their proceedings, may be proved by an examined copy; but the courts do not judicially notice them, and they do not import absolute verity, and are not conclusive of the facts stated in them, except in the case of a judgment rendered by the house

of lords, as a judicial tribunal, upon appeal. 1 Phill. Ev. 406. In this country the same rule prevails, and such documents are not noticed judicially by the courts, but must be proved. 1 Greenl. Ev., sections 481, 482.

"In this state, there is no law making the journals of the two houses of the legislature evidence for any purpose, and upon no principle of common law are they such authoritative public acts as to require the court to take judicial notice of them. The Constitution, it is true, requires that each house shall keep a journal of its proceedings, and publish the same; and the act of 1833 requires that they shall be deposited and kept in the office of the secretary of state, and that they shall be printed and published. But no provision is made for any sanction to the verity and solemnity of such proceedings, because their legal character did not require any such verification."

In *Swann* v. *Buck,* 40 Miss. 268, at pages 295 and 296, the court said:

"In support of the second objection, it was urged that, as the Constitution does not mention resolutions, in prescribing the forms and ceremonies to be observed in the passage of bills, therefore a resolution is not of equal dignity with a bill, and cannot be employed to repeal a general law.

"We cannot perceive the force of this position. All legislative acts, duly enrolled, signed by the presiding officers of both houses, and approved by the governor, it appears to us, must stand on an equal footing as to dignity, and must equally prevail as the act of the sovereign power of the state, whether they be 'enacted,' or only 'resolved.'

"It was insisted also that by a joint rule of the two houses of the legislature joint resolutions are only required to be read on two several days, and therefore the court must presume that this resolution was passed after two readings only, and hence did not become a law. On the production of the rules of the legislature, no such

rule was found to exist, and the foundation of the argument fell to the ground. But if the fact had been otherwise, we could not have indulged the presumption insisted upon, for in the case of *Green* v. *Weller,* 32 Miss. 650, in reference to this very question, this court, after stating the provisions of the Constitution requiring bills to be signed by the presiding officers of the two houses, and to be approved and signed by the Governor, and the statutory regulation that all bills thus authenticated shall be deposited in the office of the secretary of state, say: 'When an act of the legislature has passed through these forms, which are shown upon its face to have been complied with, and it is filed in the secretary's office, it become a record, and has all the legal incidents of a record, by the rules of the common law, and all the effect, as evidence of the authenticity and validity of the act, which the parliament rolls of statutes had in England.' "

In *Brady* v. *West,* 50 Miss. 68 at pages 78, 79, the court said on this point: "Mr. Justice COOLEY, in his valuable work on Constitutional Limitations, says: 'Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirements of the Constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence, and adjudge the statute void.' Cooley on Constitutional Limitations, 135.

"The Constitution requires each house to keep a journal, and declares that certain facts, made essential to the passage of the legislative act, shall be stated therein. If those facts do not appear on the journal, the conclusion is that they did not transpire. The journal of each house is made up under the immediate direction and inspection of the house, and is presumed to contain a full and complete history of its proceedings, and is the proper

evidence of the action of that branch, upon all matters be-
fore it. 1 Greenl. Ev., section 491, p. 538. It is clearly
competent to show from the journals of either branch
of the legislature that a particular act was not passed in
the mode prescribed by the Constitution, and thus defeat
its operation altogether. If a certain act received the con-
stitutional assent of the body, it will appear on the face
of the journal. And when a contest arises as to whether
the act was thus passed, the journal may be appealed to
to settle it. It is the evidence of the action of the house,
and by it the act must stand or fall. It certainly was not
the intention of the framers of the Constitution that the
signatures of the presiding officers of the two houses,
and of the executive, should furnish conclusive evidence
of the passage of an act. The presumption indeed is
that an act thus verified became a law pursuant to the re-
quirements of the Constitution, but that presumption may
be overthrown. If the journal is lost or destroyed, this
presumption will sustain the act, for it will be contended
that the proper entry was made in the journal."

In *Ex parte Wren,* 63 Miss. 512, 56 Am. Rep. 825, the
court again reviewed the question and adopted the view
that the court would not look to the journals to see wheth-
er the legislature conformed to the constitutional re
quirements. At pages 535 and 536 the court said:

"Undoubtedly the journals may be evidence, and may
be resorted to in some cases, and must be as to some mat-
ters. They were properly looked to in *Gardner* v. *The
Collector,* 6 Wallace (U. S.) 499, 18 L. Ed. 890, in the
effort to fix the date of approval of a bill by the presi-
dent. They must furnish the evidence that a bill re-
turned by the Governor without his signature and with
his objections was so dealt with as to become a law, for
it is only by the approval by two-thirds of both houses,
determined by yeas and nays entered on the journal of
each house, that such a bill can become a law, and, as
the Constitution so provides, and has not prescribed any
means of attesting or authenticating the concurrence of

those requisites to such a bill becoming a law, it rests, necessarily, on the journal, which must show that, although the bill was not signed by the Governor but returned with objections, it nevertheless became a law according to the Constitution. The case is peculiar and extraordinary, and not governed by the rules applicable to the ordinary case where the Governor signs the bill. The provision for the signing of bills by the presiding officers does not apply here, and whether the bill on reconsideration became a law may depend on those things prescribed, and which cannot be shown except by the journals of both houses. Had the Constitution provided any means of authentication of such action by the two houses as to make a bill returned by the Governor with his objections, a law, it would have been exclusive, but in the absence of such provision the journals are the memorial of the action which converts a bill returned by the Governor with his objections into a law.''

Therefore I think the contents of the journals should be proved by certified copies or by the production of the original journal in the secretary of state's office.

A court has many things to judicially know and many things of which it must take judicial notice. These subjects extend far beyond the actual knowledge of any one man however wise, and to reach a conclusion he must necessarily devote time to looking up the authoritative works and learning upon the subject. I do not favor extending the judicial knowledge and notice because what might be within the convenient reach of this court might not be accessible to the courts of original jurisdiction, yet such courts would have to judicially know whatever we judicially know and would have to judicially notice whatever we may judicially notice.

Coming now to the main question as to whether the Senate may reconsider its vote of confirmation of an appointment by the Governor, I think the better authorities and the most satisfactory reasoning are with the cases that hold that a confirmation in such case is final and may not be reconsidered subsequently by the Senate.

The provisions in the Constitution referred to about making rules for the government of the proceedings of the Senate and House of Representatives has reference to legislative matters. By section 33 of the Constitution of Mississippi all of the legislative power of this state is by express provision of the Constitution vested in the legislature composed of the Senate and House of Representatives. The House of Representatives has a right to participate in all legislative proceedings, and the power to be exercised is to be exercised by each body to the same extent as by the other body. The Senate is more than a legislative body. It exercises in certain cases a judicial power in trying officers on charges of impeachment. It also shares with the Governor certain executive powers which the house does not participate in, and I think the power to confirm an appointment by the Governor is essentially an executive power.

In 1 Watson on the Constitution, p. 226, it is said:

"The powers of the Senate have generally been divided by constitutional writers into the legislative, executive, and judicial. . . . This division is logical and appropriate. Its legislative power is to unite with the House of Representatives in passing legislation. Its executive power consists in being able to approve or reject nominations sent to it by the President for various positions and to ratify or reject treaties sent by the President. Its judicial power is derived from that clause of the Constitution which authorizes it to try impeachment proceedings presented to it by the House of Representatives.

"The Senate was intended to sustain close relationship to the President and the early Presidents frequently visited the Senate in person and conversed with the members on public questions. This was especially a custom of Washington."

Mr. Bryce in his American Commonwealth treats the Senate in the same way, and we think that the great weight of authority of the country treat the power of consenting to the appointment of officers as the exercise of an executive, rather than a legislative, function.

A very elaborate and able discussion of the question is found in *State* v. *Barbour,* 53 Conn. 76, 22 A. 686, 55 Am. Rep. 65. In that case a city charter provided that the common council in joint convention should appoint a prosecuting attorney, but gave no direction as to the mode of appointment, and the convention had no power of removal. The convention met for the purpose of making the appointment, and voted "to proceed to ballot for a prosecuting attorney."' A ballot was taken, and the relator had a clear majority of all the votes cast and of the whole convention, and the result was announced by the presiding officer. A resolution declaring the relator elected was then proposed and lost. Two resolutions were then offered, one declaring the ballot taken void by reason of errors in it (which it was found did not exist), and the other declaring the defendant "elected and appointed prosecuting attorney," both of which resolutions were passed. A contest arising between the two as to who was the rightful officer, the court said:

"The question then is reduced to this, Was the relator appointed by the ballot? In behalf of the defendant it is contended that he was not; that the ballot should be regarded as an informal one; that the convention, as it appears by its subsequent action, manifestly contemplated and intended that the passage of a resolution declaring the candidate receiving the majority of votes elected should be the act of appointment; and that until that is done, even until the convention has adjourned, the proceedings are *in fieri,* and it cannot be said that an appointment has been made.

"In behalf of the relator it is contended that the vote of the convention to proceed to ballot for a prosecuting attorney was equivalent to, and must be regarded as, a vote to elect or appoint a prosecuting attorney by ballot; that when the result was announced the appointment was complete, nothing more being required; that the relator thereby acquired a vested right to the office; and that it was not in the power of the convention by its subsequent proceedings to deprive him of it.

"We are inclined to think that the view presented by the counsel for the relator is the better one. If the convention had adjourned immediately after the result of the ballot was announced, we think it must be conceded that Mr. Coogan would have been legally appointed. The adjournment would have indicated that the convention regarded its duty as fully performed. But the convention proceeded to consider and vote upon resolutions declaring the respective candidates elected. This proceeding may be accounted for on one of two grounds: First, the convention may not have regarded a resolution as essential to an appointment, but simply as a more formal and orderly declaration of the result; secondly, that the convention considered the resolution as necessary to an appointment. In the former case it is evident that the resolution would not give efficacy to the ballot nor add to its force and effect. In the latter it is equally apparent that the views of the convention as to the necessity of a resolution would not be conclusive. So that the question remains, notwithstanding the subsequent action, was the result of the ballot à legal election? If that was its effect without the subsequent action, we think it must have the same force with it.

"It was doubtless competent for the convention to have determined in advance that the appointment should be made by the passage of a resolution, that the ballot should be an informal one, or that it should be a method of selecting a candidate to be appointed by resolution. In such a case there would have been no appointment prior to the passage of the resolution. But such was not the action of the convention. The vote was, not to take an informal ballot, not to select by ballot a person to be appointed, but to ballot for a prosecuting attorney. The ballot, we think, was understood and intended to be an election; and an election was an appointment.

"We interpret the vote to ballot as equivalent to a vote to elect or appoint by ballot—as a vote determining the method by which the appointment should be made. After

138 Miss.—22.

the passage of that vote an appointment by any other method would not have been in order—would not have been according to parliamentary usage. If the convention had omitted the ballot, and made the appointment by resolution without first rescinding the vote to ballot, it might perhaps have been a legal appointment, on the ground that there was an implied rescission, but it certainly would have been irregular. But that course was not taken. After voting to ballot a ballot was actually taken which resulted in an election by a clear majority. Then, without any vote changing the method, the convention proceeded to pass a resolution which declared another man elected and appointed. In addition to the irregularity of not following the prescribed method, they departed from it after the thing to be done had been done. The convention decided to appoint and did appoint by ballot, and then appointed another man by resolution.

"We have said that the appointment was made when the result of the ballot was ascertained and declared. Nothing more was required of the convention. Its will had been expressed in a parliamentary and legal method, had been duly declared, and become a matter of record. Declaring the result by resolution was unnecessary. No certificate or commission from the convention or its officers was required by law. Mr. Coogan's right to the office vested at once, and he might without further ceremony accept and qualify.

"We do not wish to be understood as denying the power of the convention to correct errors and to nullify the effects of fraud. If there was a palpable error or fraud, or if the ballot for any cause was illegal, the convention might undoubtedly treat it as void, and proceed to another election. If we were to look only to the resolutions which passed we might assume that there was an error in the ballot and so give effect to the resolution. But the pleadings show that it was admitted that there was in fact no error or mistake. The mere declaration that there was an error when there was none, and the

attempt to nullify the appointment on that ground cannot be vindicated.

"These views are believed to be in harmony with the best and most carefully considered cases. Appointments to office, by whomsoever made, are intrinsically executive acts. It has been so held when the appointment was made by a court. *Taylor* v. *Commonwealth,* 3 J. J. Marsh. 401. Also when made by the common council of a city. *Achley's case,* 4 Abb. Pr. 35. And when made by an executive officer. *Marbury* v. *Madison,* 1 Cranch, 137.

"When the appointing officer or body has not the power of removal, if the power to appoint has been once exercised, it is irrevocable, and the appointee will hold office during the term. *Marbury* v. *Madison, Achley's case, supra; Cole* v. *Chapman,* 44 Conn. 601; *Putnam* v. *Langley,* 133 Mass. 204.

"An appointment is complete when the last act required of the appointing power has been performed. The signing of a commission by the President of the United States, when the appointment was made by him, and the law required a commission, was held to be the last act. *Marbury* v. *Madison, supra.* Also a writing signed by the mayor of a city making a nomination to be confirmed by the common council, under the erroneous belief that such confirmation was necessary, although it was not. required by law. *People* v. *Fitzsimmons,* 68 N. Y. 514. In the case of a judicial appointment a declaration in open court, when the law does not require the appointment to be in writing, has been held to be final. *Hoke* v. *Field,* 10 Bush, 144; s. c., 19 Am. Rep. 58. In *Achley's case, supra,* it was held that the appointment was made when both branches of the common council concurred in the passage of a resolution making the appointment. So also in *People* v. *Stowell,* 9 Abb. N. C. 456. In *Conger* v. *Gilmer,* 32 Cal. 75, the law required that justices of the peace appointed by the board of supervisors should receive a commission signed by the officers of the board and sealed with its seal; it was held that a commission so

signed and sealed was the only evidence of an appoint-
ment. If however, such formal act is to be performed by
some other than the appointing power it constitutes no
part of the appointment. *Marbury* v. *Madison, supra;
People* v. *Stowell, supra.* Such formal acts in such cases
are mere ministerial acts.

"The case of *Marbury* v. *Madison, supra,* is worthy of
a more extended notice. In that case nearly all the im-
portant principles involved in this were promulgated by
the supreme court of the United States in an elaborate
opinion by Chief Justice MARSHALL, in which the whole
subject is exhaustively considered.

"'President Adams, under a law of Congress, nominated
certain persons to be justices of the peace in the District
of Columbia, and the nominations were confirmed by the
Senate. The law required that the appointees should be
commissioned by the President under the great seal of
the United States. The appointment was for a term of
five years. The President signed the commission, and the
seal, under the statute, was affixed by the secretary of
state, by whom alone it could be affixed. The commis-
sion, however, was not delivered. The persons appointed
applied to the supreme court for a mandamus to com-
pel its delivery. On a rule to show cause the court held
that the appointment was complete, and that the persons
therein named were legally entitled to the office; but dis-
charged the rule on the ground that the cause was not
within the jursidiction of the court."

*Draper* v. *State ex rel. Patillo,* 175 Ala. 547, 57 So. 772,
Ann. Cas. 1914D, 301, was a case where the Governor ap-
pointed a commissioner of a city to fill a vacancy, and a
letter was written advising the appointee of his appoint-
ment as commissioner, and a direction to send a commis-
sion to the appointee, and the recital of the appointment
for a specified term, followed by the words: "By order
of the Governor, —————, Private Secretary." And
it was held that this was a complete appointment without
a commission, and that the Governor could not there-

after cancel the appointment. In the casenote (Ann. Cas. 1914D, at page 304) it is said:

"It may be laid down as a general rule that an appointment to public office is complete when the last act required of the person vested with the appointing power has been performed."

At page 306, same volume, it is said: "There is a conflict of authority as to the time when the appointment is complete when the appointing power is vested in a collective body. Some courts hold that in making an appointment to public office the appointing body is exercising a legislative function and that the appointment is revocable under the ordinary parliamentary rules. . . .

"On the other hand, some courts hold that the making of an appointment to public office is a quasi executive duty, incapable of revocation when once exercised."

The authorities for each proposition are set forth in the casenote. See, also, *State ex rel. Childs* v. *Wadhams,* 64 Minn. 318, 67 N. W. 64; *State ex rel. Whitney* v. *Van Buskirk,* 40 N. J. Law, 463; *Re Fitzgerald,* 88 App. Div. 434, 82 N. Y. S. 811, 84 N. Y. S. 1125; 17 Ann. Cas. 1011; 19 Ann. Cas. 823.

The general rule is that an executive act, when complete, is not subject to reconsideration. That seems to us to be especially true where the public officers of the state were appointed by the Governor. It would be contravening the spirit of section 20 of our state Constitution which requires officers to have fixed terms of office for some specified period. If the Senate on consenting to the appointments made by the Governor can by entering a motion to reconsider retain the right thereafter to reject an officer or confirm him at its option, it would give the Senate power to materially interfere with the public business because no person could afford to proceed to qualify and enter upon the discharge of his duties until the senate finally adjourned. It would also give the Senate a dominating power over the executive department of the state. It would enable the Senate to play

politics, in the invidious sense, to have this power, and especially would this be true at the sessions of the legislature, where there would be a change in the occupant of the Governor's office. The dominating purpose of requiring the consent of the Senate to the approval of the Governor's appointments is to see that competent and suitable persons are selected to fill public offices.